Charles GILMORE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 380S78.

Supreme Court of Indiana.

Jan. 29, 1981.

Thomas J. Campbell, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Charles Gilmore, was convicted by a jury of burglary, a class C felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.) and found to be an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) (amended 1980). He was sentenced to terms of five years and thirty years respectively. His direct appeal raises the following issues:

1. Whether the trial court erred in refusing to grant defendant's motion to dismiss the habitual offender count;

2. Whether the trial court committed reversible error by not sustaining defendant's objection when the prosecutor allegedly commented upon defendant's failure to testify;

3. Whether the trial court erred in refusing to give two of defendant's final instructions; and

4. Whether there was sufficient evidence to sustain the jury's verdicts on both counts.

A summary of the facts most favorable to the state shows that a school building in Indianapolis was broken into on the evening of November 15, 1978. Etta Cox testified that she was employed as a custodian at the school and that while she was in the teacher's lounge between 7:30 and 8:00 p. m., she heard the sound of glass breaking in another room. Cox left the lounge and called security, then returned to the lounge and locked herself in the room. She stated that she saw a shadow through the frosted window of the door of the teacher's lounge, but could not identify any specific individual.

Officer Riley responded to the school alarm and observed a person wearing a dark cap and light jacket crawling out of a window at the school. He then saw the person duck back into the building and heard him running through the school. Riley advised other police in the area that a person had been seen on the south side of the building. Another policeman, Officer Briner, advised that he had a subject on the west side of the building that fit the description. Briner testified that he encountered defendant walking on the sidewalk next to the school and that defendant had on a dark cap and light jacket. A person present on the west side of the building would either have had to come out of the building or have climbed the fence on the south side. If anyone had climbed the fence on the south side, Officer Riley would have seen him.

After defendant was apprehended, a window was found open leading into a hallway. A section of a window in the kindergarten room was broken out and a pair of scissors belonging to the kindergarten teacher was found on a desk in the clerk's office. There were pry marks on a drawer in the desk and a broken point from the scissors was found jammed in the drawer.

Defendant claimed he had been at his girlfriend's house and was just cutting across the school grounds on his way home when he was apprehended. He said he had climbed the fence and walked down the sidewalk. After Officer Briner apprehended defendant, he immediately went to defendant's girlfriend's home. She stated that defendant had been there earlier, but had not been there in the past half hour.

## I.

Defendant first alleges that the trial court erroneously denied his motion to dismiss the habitual offender count. He was originally charged with burglary, a class C felony, on November 16, 1978. The state filed a motion to amend by adding count II, the habitual offender count, on June 22, 1979. This motion was granted and trial was held on October 4, 1979.

The right of the state to amend by adding an habitual offender count has been specifically approved by this Court. *Howard v. State,* (1978) 268 Ind. 589, 377 N.E.2d 628. An information may be amended at any time before, during or after trial so long as it does not prejudice the substantial rights of the defendant. Since the habitual criminal statute does not impose punishment for a separate crime but provides a more severe penalty for the crime charged and since defendant was given adequate time to prepare a defense, an amendment to add the habitual criminal count did not prejudice the substantial rights of the defendant. *Howard v. State, supra.*

Defendant further argues that his rights were prejudiced in this case because the amendment adding the habitual offender charge affected the availability of a defense. He argues that he was precluded from testifying in his own behalf during the trial on the burglary charge because of the risk that the state would use his past criminal convictions for impeachment purposes and this evidence would influence the jury in its deliberations on the habitual offender count. We find there is no merit to this contention since the trial court held a bifurcated trial in complete accordance with the requirements of *Lawrence v. State,* (1972) 259 Ind. 306, 286 N.E.2d 830. This bifurcated trial procedure was adopted to prevent unnecessary prejudice to a defendant during a trial on a principal charge. There will always be some inherent prejudice to any defendant who has prior criminal convictions but a bifurcated procedure, such as that followed in the instant case, will preserve a defendant's right to a fair trial. We find no error here. *See Jameison v. State,* (1978) 268 Ind. 599, 377 N.E.2d 404.

## II.

During the trial, defendant called a witness, Santos Irizarry, in an attempt to show that he had been working at a gas station on the evening of the crime. During the direct examination the following exchange occurred:

Q. [by defense counsel]: "What happened when it got dark? Did Mr. Gilmore eventually leave the gas station?"

A. "Yes. When it got dark, he said—"

*Mr. Commons* [prosecutor]: "I would object what he said, Your Honor, as being hearsay."

*Court*: "Well, is that an exception to the *Patterson* rule or not?"

*Mr. Commons*: "Well Judge, I think the hearsay rule applies to statements made by the defendant during the res gestae. From what I understand of his testimony, it is res gestae unless he wants to get up and testify himself."

*Court*: "I am going to overrule your objection. There may be merit to it but I am going to overrule it."

*Mr. Hollander* [defense counsel]: "Judge, I would object to the prosecutor's reference also."

*Court*: "I have overruled the objection. Proceed."

Defendant now argues that the prosecutor's statements regarding the application of the hearsay rule were impermissible comments on his failure to testify and constitute reversible error. It is true that any direct or indirect comment which is subject to interpretation by a jury as a comment upon the failure of the defendant to testify is impermissible. *Bryant v. State,* (1979) Ind., 385 N.E.2d 415; *Rowley v. State,* (1972) 259 Ind. 209, 285 N.E.2d 646; Ind. Code § 35–1–31–3 (Burns 1979 Repl.).

However, we are here concerned with a discussion between the prosecutor and the judge about a technical hearsay question. The remarks were not direct comments on defendant's failure to testify but were part of a hypothetical example

used to clarify the hearsay issue. Furthermore, the remarks were directed to the judge and not to the jury. While it would be better practice to hold such a discussion outside the presence of the jury, this is not always practicable. We find no error here.

### III.

Defendant next contends that the trial court erred in refusing two of his final instructions. Defendant's final instruction No. 1 covered the issue of the presumption of innocence. The trial court refused that instruction and instead gave its own preliminary instruction No. 3 which stated as follows:

"Under the law of this State you are the sole judges of both the law and the evidence and you must presume that the defendant is innocent. You must continue to believe that he is innocent throughout the trial, unless the State proves that the defendant is guilty, beyond a reasonable doubt, of every essential element of the offense charged. The burden of proof herein is on the State alone and never shifts to the defendant.

"Since the defendant is presumed to be innocent, he is not required to present any evidence to prove his innocence, nor to prove, do, or explain anything. If, at the conclusion of the trial, there remains in your mind a reasonable doubt concerning the defendant's guilt, you must find him not guilty."

■ Defendant contends that this instruction did not adequately instruct the jury that it was their duty to reconcile the evidence upon the theory of defendant's innocence if they could reasonably do so. However, the court further instructed the jury in a separate instruction that all reasonable doubt should be resolved in favor of the defendant. We find that the court's instructions adequately covered the theory of the presumption of innocence, although not in the exact words that defendant requested. The refusal of a trial court to give a tendered instruction is not reversible error if the substance of the instruction is adequately covered by other instructions

given by the court. *Richmond v. State* (1979) Ind., 387 N.E.2d 1312; *Toliver v. State*, (1978) 267 Ind. 575, 372 N.E.2d 452; *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352.

■ Defendant tendered the following instruction No. 9 which was also refused: "The Defendant requests that you find that on the day in question he had assisted his sister's boyfriend who was working at a self-service gas station on East Washington Street from mid-afternoon until late afternoon; that after leaving the gas station, he went to his girlfriend's house at 141 Highland Street, Indianapolis, Indiana, where he stayed for approximately one (1) hour, before leaving, heading in the direction of the house where he was staying at 1424 Marlowe Street, Indianapolis, Indiana, and that when he left 141 Highland Street, he took a shortcut through the alley, jumped the fence at the schoolgrounds of School Number Fourteen ( # 14), where he was immediately arrested and charged with the commission of this crime.

"If you find these statements to be true, then you must find the Defendant not guilty of the commission of this crime."

This instruction was properly refused because it invaded the province of the jury by attaching weight to certain evidence. *Blackburn v. State*, (1979) Ind., 390 N.E.2d 653; *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411.

### IV.

Defendant finally contends that the verdicts were not supported by sufficient evidence. He first argues that since the evidence connecting him with the crime was largely circumstantial it was not enough to identify him as the person who broke into the school building.

■ We have consistently held that this Court does not reweigh the evidence or judge the credibility of witnesses and will consider only that evidence most favorable to the state and all reasonable inferences drawn therefrom. When there is substan-

tial evidence of probative value to support each element of the offense, the verdict of the jury will not be disturbed. *Wofford v. State*, (1979) Ind., 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. On review, this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Hall v. State*, (1980) Ind., 405 N.E.2d 530; *Parks v. State*, (1979) Ind., 389 N.E.2d 286; *Jones v. State*, (1978) 268 Ind. 640, 377 N.E.2d 1349.

In this case, the evidence shows that Etta Cox was the only authorized person in the school building on the night of the crime. She heard glass breaking and called security. Officer Riley arrived at the building a few minutes later and saw someone wearing a dark cap and light jacket starting to crawl out of a window. The person ducked back into the building and Officer Riley advised other officers that a person had been seen on the south side of the building. Officer Briner then apprehended defendant walking on a sidewalk on the west side of the building. Defendant was wearing a dark cap and a light jacket. In order to be on the west side, a person would either have had to come out of the building or would have had to climb the fence on the south side of the building in full view of Officer Riley. There was evidence that there had been an attempt to pry open a desk drawer in the clerk's office in the building. This was sufficient evidence to support the jury's verdict of burglary.

Defendant further argues that his conviction on count II, the habitual offender count, was not supported by sufficient evidence in that one of the state's exhibits relating to a prior conviction was erroneously admitted. During the hearing on count II, the state called Anthony Larocca as a witness. Larocca testified that he was a counselor employed by the Indiana Reformatory and was not the custodian of the records. Larocca was permitted to testify, over defendant's objection, regarding the documents marked as state's exhibit No. 16. These exhibits consisted of fingerprints, photographs, and a copy of a commitment to the Department of Corrections and were all properly certified by Sam Whiteman, the Director of Records at the Indiana Reformatory.

We find no error here since our statute, Ind.Code § 34–1–17–7 (Burns 1973), provides for admission of copies of public records when they are attested as true and complete by the keeper of the records under the seal of his office. *Eldridge v. State*, (1977) 266 Ind. 134, 361 N.E.2d 155. Since there was a proper certification of the documents in the instant case we find that they were properly admitted and there was sufficient evidence to support the verdict on count II.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.