**Leslie Allen SMITH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 579S126.**

Supreme Court of Indiana.

July 6, 1981.

Nile Stanton, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Leslie Allen Smith was charged in Putnam Circuit Court with escape, Ind.Code § 35–44–3–5 (Burns 1979 Repl.); attempted murder, §§ 35–41–5–1, 35–42–1–1; attempted kidnapping, §§ 35–42–3–2(a)(3), 35–41–5–1; and kidnapping, § 35–42–3–2(a)(3). Smith was also charged with being a habitual criminal, § 35–50–2–8. After a trial by jury, Smith was found guilty as charged of escape, attempted murder, and attempted kidnapping. In lieu of the kidnapping charge, the jury found appellant guilty of confinement. In the sentencing phase, the jury found that Smith was a habitual offender. The trial court sentenced Smith to a two-year term on the escape charge, and to forty-year terms on the attempted murder and attempted kidnapping charges. The court ordered these terms to run concurrently. Pursuant to the finding of habitual criminality, the court imposed an additional thirty-year term on Smith, to be added to the sentences imposed for the above crimes.

The record reveals that on September 1, 1978, appellant Smith and Andrew Pine were inmates at the Indiana State Farm. On the previous evening, Smith telephoned his girlfriend, Barbara Eikelman, in Anderson, Indiana, and requested her assistance in helping Pine and Smith escape from prison. The two men had unsuccessfully begun a similar escape attempt one day earlier. On September 1, Eikelman drove to a prearranged location on United States Highway 40 adjacent to the prison grounds. After Eikelman picked up Smith and Pine, the trio drove east to State Road 231, and then proceeded south to Interstate 70. Smith and Pine were slumped down in the seats so as not to be seen from the outside.

Indiana State Police Officer Rice began to follow Eikelman's car before it reached the interstate. As her car started up the entrance ramp to eastbound Interstate 70, Officer Rice signalled for Eikelman to pull her car over to the shoulder of the roadway. Upon approaching the car, Rice discovered the other two occupants, and ordered them out of the car. About this time, Indiana State Police Officer Fields arrived on the scene to assist Rice. Each of the officers then began securing the two prisoners. At some point, Smith was able to remove Fields' revolver from its holster, and Pine thereafter obtained Rice's gun. Smith and Pine then ordered Rice and Fields into the trunk of Rice's car.

As this was being accomplished, a third state trooper, Rairdon, arrived at the scene in his patrol car. Smith told Rairdon to get out of his car, threatening to kill Rice and Fields if Rairdon attempted to operate the police radio. Before leaving his car, Rairdon placed an extra revolver in his back pocket. Pine ordered Rairdon to relinquish his service revolver, and Rairdon complied. At that time, appellant Smith was holding Rice and Fields at gunpoint in the trunk of Rice's car. Shortly thereafter, Rairdon disarmed Pine and created a "Mexican stand-off" situation with Smith, who continued to threaten to kill Rice and Fields. As Rairdon started for Smith, Smith turned and fired one shot into the open automobile trunk in which Rice and Fields were lying. The shot struck Fields in the arm. Rairdon

then bounded for Smith, and, in the ensuing struggle, Rairdon shot Smith once in the back. Rice and Rairdon were then able to gain control of the situation.

### I.

Smith first claims the trial court erred in refusing to grant his second motion for a change of judge. The record reveals that the various counts were filed by information in the Putnam Circuit Court on September 1, and 5, 1978. On September 21, 1978, Smith filed his motion for a change of judge. The regular judge of the Putnam Circuit Court, Francis N. Hamilton, granted this motion, and Rexell A. Boyd was thereafter selected as special judge. On November 30, 1978, appellant Smith filed a second motion for a change of judge. The trial court held a hearing on this matter on December 4, and thereafter denied appellant's motion.

Appellant Smith has not shown by evidence found in the record any bias or prejudice on the part of Special Judge Boyd. Appellant's motion alleges that Judge Hamilton, who was no longer involved in the case, had improperly interjected himself into the proceedings in an attempt to influence Special Judge Boyd. Specifically, Smith claimed that Judge Hamilton had taken part in a hearing held on November 22, 1978, and that he advised the prosecutor and the special judge concerning a motion for continuance and a discovery question. Smith concluded that Judge Hamilton's actions reveal his bias and prejudice against him; he further claimed that Special Judge Boyd's bias and prejudice were revealed when Boyd allegedly permitted Judge Hamilton to "participate" in the proceedings. The prosecutor filed a response to Smith's motion, contradicting several of Smith's crucial allegations. Likewise, Judge Hamilton filed a counter-affidavit to Smith's motion, categorically denying that any hearing was held on November 22 and that he had participated in any alleged hearing after Special Judge Boyd assumed jurisdiction of the case.

 The record reveals that a hearing was held on this motion on December 4, 1978, and the trial court thereafter denied Smith's motion. Smith now alleges this was error. The record simply does not support appellant's claim. Smith has neglected to include in the record any transcript of the December 4 hearing. Thus, the record before this Court contains only the allegations—and counter-allegations—of the parties. It was incumbent upon Smith, as appellant, to present a sufficient record to permit an intelligent review of the issue. *State v. Irvin* (1973), 259 Ind. 610, 613, 291 N.E.2d 70, 72; *Johnson v. State*, (1972) 258 Ind. 648, 654, 283 N.E.2d 532, 536; *Burns v. State*, (1970) 255 Ind. 1, 5–6, 260 N.E.2d 559, 562. Thus, error which is alleged but not disclosed by the record is not a proper subject for review. *State v. Irvin, supra; Cooper v. State*, (1972) 259 Ind. 107, 112, 284 N.E.2d 799, 802; *Turner v. State*, (1972) 259 Ind. 344, 348, 287 N.E.2d 339, 342. Because the record before us contains merely allegations of bias, prejudice and improper influence, and no evidence to support these allegations, we cannot conclude that the trial court erred in denying Smith's second motion for a change of judge.

### II.

Appellant Smith next argues the trial court erred in refusing several of his tendered instructions. These instructions defined offenses which are, allegedly, included offenses in the charge of attempted murder. Tendered instruction number four reads in its entirety as follows:

"The statutes of Indiana define battery as it may apply to this case as follows:

'A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery . . .

(1) A Class A misdemeanor . . . if it is committed against a law enforcement officer . . .

(2) A Class D felony if it results in bodily injury to such an officer . . ., and

(3) A Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon.' "

Record at 485. Smith argues that battery of a law enforcement officer is a lesser-included offense of attempted murder, and, therefore, that the jury should have been so instructed.

In *Goodpaster v. State*, (1980) Ind., 402 N.E.2d 1239, this Court explained the analysis to be used in determining whether an offense is an included offense of the charged crime. We must first examine the statutes creating the two offenses. *Id.* 402 N.E.2d at 1242; *Lawrence v. State*, (1978) 268 Ind. 330, 337, 375 N.E.2d 208, 212. The offense of battery, Ind.Code § 35–42–2–1 (Burns 1979 Repl.), as Smith would have had the jury instructed, contains the following elements: (1) a knowing or intentional (2) touching of (3) a law enforcement officer (4) in a rude, insolent or angry manner. These elements constitute a class A misdemeanor. The offense becomes a class D felony if the attack results in bodily injury to a law enforcement officer. Under Ind.Code §§ 35–42–1–1(1) and 35–41–5–1, the elements of attempted murder are: (1) the knowing or intentional (2) taking of a "substantial step toward" (3) the killing of (4) another (5) human being.

■ It is clear, then, that the battery described in that portion of the statute quoted in Smith's tendered instruction is not an *inherently* included offense of attempted murder. Obviously, the murder and attempt statutes do not require that the intended victim be a law enforcement officer. On the other hand, under the offense defined in § 35–42–2–1 and Smith's tendered instruction, the victim must be a law enforcement officer. Thus, it is possible to prove the offense of attempted murder without necessarily proving the offense of battery on a law enforcement officer.

We must next determine whether a battery was an included offense of the attempted murder alleged *in this case*. *Goodpaster v. State, supra*, 402 N.E.2d at 1243. This requires an examination of the factual allegations contained in the charging instrument "to determine if the elements of the lesser offense, by virtue of the manner and means allegedly employed in the commission of the charged crime, are alleged to have been committed." *Id., quoting Roddy v. State*, (1979) Ind.App., 394 N.E.2d 1098, 1107. *See Lawrence v. State, supra*.

The charging information in the case before us alleges:

"that Leslie Allen Smith ... on or about the first day of September, 1978, ... did then and there attempt to commit the crime of murder by knowingly attempting to kill Richard Rice and Lanny Fields by shooting at [their] bodies ... with a certain gun loaded with gunpowder and metal bullets, then and there held in the hand of the said Leslie Allen Smith with the intent to thereby inflict mortal wounds, in and upon the bodies of the said Richard Rice and Lanny Fields, which conduct constituted a substantial step toward the commission of said crime of murder."

Record at 12. Thus, the prosecution clearly intended to allege attempted murder, and none of its possibly included offenses, in this charging instrument. The information asserts that Smith knowingly attempted to kill Richard Rice and Lanny Fields by committing an act which constituted a substantial step toward the commission of two murders. Therefore the State did not have to prove that Rice and Fields were law enforcement officers to gain a conviction for attempted murder. The exclusion of the material elements of battery on a law enforcement officer reflects the prosecution's desire to avoid the opportunity for the jury to convict Smith of a lesser offense in lieu of the attempted murder charge. *Goodpaster v. State, supra; Roddy v. State, supra*.

Thus, in this case, proof of a battery on a law enforcement officer was not required to gain a conviction of Smith for attempted murder. Therefore, battery on a law enforcement officer was not included within the crime charged, and appellant Smith's tendered instruction number four was, for this reason properly refused. *Id.*

▪ ▮ Moreover, the evidence clearly shows that Smith intentionally fired the revolver into the open automobile trunk containing Rice and Fields. The intent to kill, therefore, is plainly inferable from this evidence. *See, e. g., Johnson v. State,* (1980) Ind., 401 N.E.2d 674, 675; *Bradberry v. State,* (1977) 266 Ind. 530, 538, 364 N.E.2d 1183, 1188. The intent-to-kill element is the key element which distinguishes attempted murder from battery of a law enforcement officer, and the evidence supporting this element is not in serious dispute. The trial court thus properly refused Smith's tendered instruction number four for this reason as well. *Lawrence v. State,* (1978) 268 Ind. 330, 338, 375 N.E.2d 208, 213; *Hester v. State* (1974) 262 Ind. 284, 289–90, 315 N.E.2d 351, 354; *Hash v. State,* (1972) 258 Ind. 692, 698, 284 N.E.2d 770, 774.

Smith also argues the court erroneously refused his tendered instruction number five. This instruction concerned the offense of criminal recklessness, Ind.Code § 35–42–2–2 (Burns 1979 Repl.), and reads as follows:

> "The statutes of Indiana define recklessness as follows:
>
> '(a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a Class B misdemeanor. However, the offense is a Class A misdemeanor if the conduct includes the use of a deadly weapon.
>
> (b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another commits criminal recklessness, a Class D felony.' "

Record at 486.

Smith objected to the court's refusal to give this instruction, arguing that criminal recklessness is a lesser-included offense of the charge of attempted murder.

▮ We hold the trial court properly refused this instruction. First, the instruction does not tell the jury that the crime of criminal recklessness is one of the charged offenses, nor that it is a lesser-included offense of any of the charged offenses.

Thus, the offense of criminal recklessness is not clearly placed in its proper context in this case. Second, the instruction uses the words "recklessly, knowingly or intentionally." Under our penal code, these are terms of art; that is, they have special legal definitions. Ind.Code § 35–41–2–2 (Burns 1979 Repl.). We have held that the use of a word of art in an instruction requires a further instruction on the definition of that word. *Martin v. State,* (1974) 262 Ind. 232, 246, 314 N.E.2d 60, 70, *reh. denied,* 262 Ind. 232, 317 N.E.2d 430, *cert. denied,* (1975) 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841. *Cf. Lock v. State,* (1980) Ind., 403 N.E.2d 1360. However, Smith tendered no additional instructions on the meaning of these terms. For these reasons, the tendered instruction was confusing and thus properly refused. The trial court did not err in refusing appellant's tendered instruction number five.

▮ Appellant Smith also argues the trial court erred in refusing his tendered instruction number ten. This instruction consisted of three verdict forms pertaining to the offenses of battery, criminal recklessness and confinement. The verdict forms, if presented to the jury, would have permitted a finding that appellant actually committed battery or criminal recklessness under Count II, the attempted murder charge, and a finding that he was guilty of confinement under Count IV, the kidnapping charge. For the reasons discussed above, the court did not err in refusing to submit verdict forms concerning battery and criminal recklessness. Further, a verdict form for the offenses of confinement was before the jury in the group of verdict forms presented by the trial court. Therefore, there was no need to accept Smith's tendered form on this offense. *See Hauger v. State,* (1980) Ind., 405 N.E.2d 526; *Norton v. State,* (1980) Ind., 408 N.E.2d 514, 533, 535. The trial court properly refused Smith's tendered instruction number ten.

### III.

Appellant Smith contends the trial court erred in modifying one of his tendered in-

structions and then giving the instruction as modified to the jury. Smith's tendered instruction number three, in its original form, provided:

"Under an information for attempted murder, it is possible, if the evidence warrants, to find the defendant guilty of battery or recklessness. Of the three crimes named in this instruction, attempted murder is the greatest in magnitude and recklessness is the least in magnitude."

Record at 458. The trial court amended this language and gave the following instruction to the jury:

"Under an information for attempted murder, it is possible, if the evidence warrants, to find the defendant guilty of attempted involuntary manslaughter. Of the [two] crimes named in this instruction, attempted murder is the [greater] in magnitude and involuntary manslaughter is the [lesser] in magnitude."

Record at 458.

Appellant Smith presented two bases for his objection to the court's modification of this instruction. First, he argued that battery and recklessness were lesser-included offenses of attempted murder as charged in Count II of the information. We disposed of this argument in Issue II, *supra.* Second, Smith contended there could be no attempted involuntary act, implying that "attempted involuntary manslaughter" is definitionally impossible. The involuntary manslaughter statute, Ind.Code § 35–42–1–4 (Burns 1979 Repl.), states in pertinent part:

"A person who kills another human being while committing or attempting to commit (1) a Class C or D felony that inherently poses risk of serious bodily injury; (2) a Class A misdemeanor that inherently poses risk of serious bodily injury; or (3) battery, commits involuntary manslaughter."

Our statute on attempt, § 35–41–5–1, *supra,* states in pertinent part: "A person attempts to commit a crime when, with the culpability required for the commission of the crime, he engages in conduct that con-

stitutes a substantial step toward commission of the crime."

In *Williams v. State,* (1979) Ind., 395 N.E.2d 239, 244, we affirmed a finding of guilty of attempted involuntary manslaughter. However, a close reading of that opinion reveals that that case was litigated on the assumption that there was such a crime, and focused on the defendant's argument that the evidence supported only the charge of robbery, a class B felony, when the statute provided that a person commits involuntary manslaughter if he kills someone while committing a class C felony, a class D felony or a class A misdemeanor that inherently poses a risk of serious bodily injury or battery. As this issue was presented in *Williams, supra,* it was properly determined.

We hold that Indiana Code § 35–41–5–1 (Burns 1979 Repl.) can have application only to specific intent crimes, and that there can be no crime of "attempted involuntary manslaughter." *See Rhode v. State,* (1979) Ind.App., 391 N.E.2d 666, (attempted reckless homicide). In view of our holding, the instruction here is an incorrect statement of the law and the giving of it was error. Such error, however, was harmless inasmuch as the defendant here was not convicted of "attempted involuntary manslaughter."

## IV.

Smith next presents several constitutional attacks on our habitual offender statute. First, he contends the thirty-year term imposed under the statute constitutes cruel and unusual punishment as applied to him. In November, 1967, appellant was adjudged guilty of first degree burglary in Marion County, Indiana, and placed on probation under a withheld sentence. Approximately two months later, Smith was found to have violated his probation, and was thereafter sentenced to a one-to-ten year term. In 1973, Smith was adjudged guilty of dwelling house breaking in Warren County, Kentucky, and ordered to serve a three-year prison term. In 1976, Smith was adjudged guilty of aggravated assault with

a firearm in Seminole County, Florida, and sentenced to serve a three-year term, with an additional two years on probation. In March, 1978, Smith pleaded guilty in Madison County, Indiana, to a charge of commission of a felony while armed. He was sentenced to a ten-year prison term. All of these facts were presented in evidence during the habitual offender stage of the proceedings. In light of this evidence, we cannot say that the additional thirty years imprisonment imposed here subjects Smith to cruel and unusual punishment. *Hall v. State*, (1980) Ind., 405 N.E.2d 530, 535; *Shepler v. State*, (1980) Ind., 412 N.E.2d 62, 69; *Norris v. State*, (1979) Ind., 394 N.E.2d 144, 150. *See Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382.

Appellant Smith also argues that the application of our recidivist statute constitutes vindictive justice, in contravention of article one, section eighteen of the Indiana Constitution. He further contends that the habitual criminal procedure described in Ind.Code § 35–50–2–8 (Burns 1979 Repl.) denies an accused the right to a fair and impartial jury. We recently upheld this statute against both of these constitutional challenges in *Ferguson v. State*, (1980) Ind., 405 N.E.2d 902, 908–09. *See Gilmore v. State*, (1981) Ind., 415 N.E.2d 70, 73; *Shepler v. State, supra*. Appellant has not convinced us that we should change our position on either question.

Smith next asserts that our habitual offender statute provides for the punishment of an accused based solely on his "status" as a recidivist. In support of this proposition, he cites *Robinson v. California*, (1962) 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. The *Robinson* case involved a California statute which created a criminal offense for being addicted to the use of narcotics. The United States Supreme Court described the statute as one "which makes the 'status' of narcotics addiction a criminal offense, for which the offender may be prosecuted 'at any time he reforms.'" *Id.* at 666, 82 S.Ct. at 1420, 8 L.Ed.2d at 762. Recognizing narcotic addiction as an illness, the Supreme Court held: "[A] state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment." *Id.* at 667, 82 S.Ct. at 1420–21, 8 L.Ed.2d at 763. Smith urges that our recidivist statute, like the statute struck down in *Robinson v. California*, renders a finding of habitual criminality a "status," and thus inflicts cruel and unusual punishment.

We find the *Robinson* case to be clearly distinguishable and not controlling on this question. Fundamentally, the habitual criminal statute does not create a criminal *offense. Griffin v. State*, (1981) Ind., 415 N.E.2d 60, 69; *Ferguson v. State, supra; Norris v. State, supra*. As the State correctly points out, the statute does not permit a person to be arrested simply because he has three prior felony convictions. Under our statute, the procedure which ultimately results in an enhanced sentence is triggered only when the accused has been convicted of a felony in an immediately preceding procedure. It is this felony conviction, and not the finding of habitual criminality, which causes the accused to be incarcerated. The prosecution must also show, of course, that the immediate conviction is, for the defendant, at least his third felony conviction. Thus, the imposition of the enhanced punishment occurs only when the accused has already been convicted of other, clearly culpable conduct on three occasions.

Therefore, as we explained in *Ferguson v. State, supra*, and *Hall v. State, supra*, the habitual offender statute creates no new offense; it merely enhances the punishment for the immediate crime because "prior sanctions have failed to deter [him] from committing felonies." *Hall v. State, supra*, 405 N.E.2d at 536; *Norris v. State, supra*. We hold that the habitual offender statute does not create a status offense prohibited by *Robinson v. California, supra*.

Appellant Smith also contends that our habitual criminal statute violates his right against double jeopardy. There is no

merit to this contention. *Shepler v. State, supra; Hall v. State, supra.*

Smith's final attack on the constitutionality of the habitual offender statute concerns the prosecutor's discretion in implementing the subject procedures. Smith contends the statute improperly grants the prosecutor too much discretion in this regard. He argues that the power granted by the statute creates a situation in which arbitrary and unreasonable distinctions are created among the same class of citizens—those with three prior felony convictions.

In *Oyler v. Boles*, (1962) 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, the United States Supreme Court disposed of a similar equal protection argument. The Court explained: "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Id.* at 456, 82 S.Ct. at 506, 7 L.Ed.2d at 453. *See United States v. Niemiec*, (7th Cir. 1980) 611 F.2d 1207. Petitioner's contention was disposed of by noting that his allegation did not assert that the alleged selective enforcement was based upon "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*, 82 S.Ct. at 506, 7 L.Ed.2d at 453.

█ Likewise, appellant Smith does not contend or show here that the habitual offender statute is generally applied in arbitrary fashion or through some arbitrary classification. Moreover, he has not shown that the statute was arbitrarily applied against him, nor that he was unjustly found to be a habitual offender. Thus, Smith has not shown that the wide discretion granted to prosecutor by this statute is being, or has been, applied in a manner which denied him equal protection of the law. This issue is without merit. *Oyler v. Boles, supra; United States v. Niemiec, supra; United States v. Catlett*, (8th Cir. 1978) 584 F.2d 864; *United States v. Hughes*, (7th Cir. 1978) 585 F.2d 284; *United States v. Peskin*, (7th Cir. 1975) 527 F.2d 71. *See Bordenkircher v. Hayes*, (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604.

V.

Finally, appellant argues the trial court erred in giving final instruction number two in the habitual criminal phase of the proceedings. This instruction stated:

"The defendant in this case had a right to go upon the stand and testify in his own behalf if he chose to do so. The law, however, expressly provides that no presumption adverse to him is to arise from the fact that he does not place himself upon the witness stand. So, in this case, the mere fact that the defendant has not taken the stand should not be permitted by you to prejudice him in any way. It should not be considered as evidence of either his guilt or innocence. The failure of the defendant to testify is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part."

Record at 479. Smith objected, asserting this language amounted to an improper reference to or comment on his failure to testify. Thus, he argues the instruction violated his right against compulsory self-incrimination.

█ Even assuming the general rule on this issue would apply to the penalty phase of a habitual criminal case, we do not believe Smith can show any harm from the giving of this instruction. Of crucial importance is the fact that Smith did, in fact, testify during the guilt-determination phase of the trial. During his testimony, he fully acknowledged that he had been convicted of certain felonies. These same prior convictions were later proved independently by the prosecutor during the habitual offender phase. The crucial question involved in the habitual offender proceeding was whether Smith had been convicted of the prior offenses as alleged. The trial court properly instructed the jury to this effect. Smith had already admitted to this jury that he had sustained the prior convictions. Thus, because Smith had testifed in an earlier phase of this trial, because such testimony touched upon the exact questions at stake in the habitual offender phase, and because

of the limited scope of the habitual offender proceedings, there was no basis on which the jury could allegedly speculate on Smith's reasons for not testifying in the habitual offender phase. *See Carter v. Kentucky,* (1981) —— U.S. ——, 101 S.Ct. 1112, 67 L.Ed.2d 241. Therefore, under the facts of this case, we hold this instruction did not violate his right against self-incrimination.

Finding no reversible error, we affirm the judgment of the trial court.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

I cannot agree with the opinion of the Court in Section I, wherein it concludes that the trial judge's ruling upon the second motion for a change of judge cannot be reviewed in this appeal because of the absence from the record of a transcript of an evidentiary hearing held on such motion. This was a motion for a change of judge for cause in affidavit form. Litigation at the trial level upon this type of motion is limited to the face of the affidavits filed. The trial judge before whom it is filed is limited to determining whether the allegations of bias and prejudice are sufficient, and upon review this Court is likewise limited. The Legislature and this Court have never required or permitted an evidentiary hearing to be conducted by the judge alleged to be biased and prejudiced against a party for the purpose of determining whether allegations of observable and demonstrable facts are true.

In *Barber v. State,* (1925) 197 Ind. 88, 149 N.E. 896, the trial judge conducted a hearing to determine whether an allegation in an affidavit for change of judge was true and accurate. The Court found the denial of the motion error and stated:

"It has long been the settled law of this state that where an affidavit in the statutory form ... is presented to the trial court before the beginning of trial, asking for a change of venue from the judge, it is the imperative duty of the court to grant it." 197 Ind. at 93, 149 N.E. 896. This approach has been adhered to under the present governing rule, and in *State ex rel. Benjamin v. Criminal Court of Marion County, Jacobs, Judge* (1976) 264 Ind. 191, 341 N.E.2d 495, we said that the criminal court was required to grant petitioner's timely motion even though the judge proceeded to hear evidence and found that bias and prejudice did not exist.

As I understand the allegations in the second motion here, the regular judge from whom the first change was taken told the special judge how he should rule upon a defense motion for continuance and a discovery question. The fact that a sitting judge heard such a statement from another judge or attorney would not support the inference that the sitting judge was or thereby became biased and prejudiced in the case. The conclusion stated, that is that the special judge was biased and prejudiced against the party, stands therefore unsupported on the face of the affidavit and the affidavit was properly denied on its face.