GIVAN, Chief Justice.
Appellant was charged with Murder. A jury trial resulted in a conviction of the lesser included offense of Voluntary Manslaughter, a Class B felony. The court imposed a twenty (20) year sentence.
The facts are: During the evening of November 8, 1983, the victim, Timothy Boyd, met Chester Graves and Mervin Mer-riweather at the Club Paradise bar in Evansville. Boyd told them he had been involved in an altercation with appellant and William Beverley earlier that day. Beverley entered the bar and indicated to Boyd that he wanted to fight outside. The two men, who were unarmed, fought in the parking lot, then continued the fight inside the bar until the bartender restored order.
Graves testified that approximately five minutes later, as he, Merriweather and Boyd were standing outside the Club Paradise, appellant approached the bar from the east. Boyd stepped onto the sidewalk and appellant fired two shots into the air, then continued toward Boyd and fired a third shot which struck him in the side. As Boyd spun around and ran into the street, appellant followed and fired a fourth shot which struck Boyd in the back.
Boyd was taken by car to a nearby hospital. Upon his arrival, Boyd's heart stopped, but the hospital staff were able to resuscitate him. A decision was made to perform an operation to repair damage to his thoracic aorta. Although the damage was repaired, Boyd died after the surgery.
Appellant, who interposed a claim of self-defense, testified that he observed Graves +and Merriweather as he approached the Club Paradise. When Graves yelled into the bar "here he comes," Boyd, who was armed with a crowbar and a knife, came out onto the street. Boyd yelled "I told you I would get you" and proceeded toward appellant. Appellant pulled out his gun and fired two shots into the air, inten *1194 tionally missing Boyd. Boyd told appellant he would not shoot him and continued to advance. Appellant then fired a third shot and, as Boyd spun away, fired another.
Appellant contends the trial court erred in giving Final Instruction No. 17 on the self-defense issue and further erred in denying his Tendered Instructions Nos. 2 and 3 on the same issue.
The concluding paragraphs of Final Instruction No. 17 read as follows:
"If there is any evidence whether through testimony or physical fact that a defendant acted in defense of himself, then the State of Indiana must negate the defense beyond a reasonable doubt.
In summary, a claim of self-defense contains the following elements:
The defendant must show that by not being the initial aggressor he acted without fault, or if with fault by being the initial aggressor or entering into combat with another person that he retreated to the legal limit; that the defendant honestly feared or actually was in real danger of death or great bodily harm; the force used as (sic) reasonably necessary to prevent serious bodily injury to himself.
If the State disproves any of the above elements, it has sustained its burden and there is no self-defense claim, and if the State of Indiana does not prove beyond any reasonable doubt that this defendant did not act in self-defense, then you must acquit said defendant."
Appellant specifically objects to the words "defendant must show," arguing that the effect of that language was to shift the burden of proof on the issue of self-defense to him and thereby confuse and mislead the jury. |
We have previously stated that a defendant's assertion of a claim of self-defense requires him to show: 1) he was in a place where he had a right to be; 2) he acted without fault; and 3) he had a reasonable fear or apprehension of death or great bodily harm. Wade v. State (1985), Ind., 482 N.E.2d 704; Hinkle v. State (1984), Ind., 471 N.E.2d 1088. Once a claim of self-defense has been asserted, the State bears the burden of proving beyond a reasonable doubt the absence of one of those elements. Finkle, supra.
The controverted language cannot be construed to shift the burden of proof on the issue of self-defense, as it constitutes essentially a restatement of the case law addressing what a defendant must show to raise a valid claim of self-defense, The preceding and following paragraphs of the final instruction, along with several other final instructions given by the court, made it clear to the jury that the burden of proof on all issues rested entirely with the State. Jury instructions are to be read as a whole and in reference to each other. Green v. State (1982), Ind., 438 N.E.2d 266. The trial court did not err in giving the final instruction.
Regarding the refused instructions, appellant, while conceding that Final Instruction No. 17 "touched on" the issues addressed in his tendered instructions, argues that the court's instruction was not a sufficient explanation of the law regarding self-defense.
The substance of the tendered instructions was covered, albeit in less detail, in the court's final instruction. The refusal to give a tendered instruction is not erroneous where the substance of the tendered instruction is adequately covered by instructions given by the court. Id.; Gilmore v. State (1981), 275 Ind. 134, 415 N.E.2d 70. There was no error in the refusal of the tendered instructions.
Appellant also contends there was insufficient evidence adduced at trial to show the victim died from injuries inflicted by him.
Upon addressing the issue of the sufficiency of the evidence, this Court will neither reweigh the evidence nor judge the credibility of the witnesses. Rhinechardt v. State (1985), Ind., 477 N.E.2d 89.
In a prosecution for the crime of murder, the cause of death is not an element of the offense. Wilson v. State *1195 (1982), Ind., 432 N.E.2d 30. "An individual who inflicts injury upon another is guilty if the injury directly contributes mediately or immediately to the death of that person." Manna v. State (1982), Ind., 440 N.E.2d 473, 474.
The bullet which struck the victim in the back lacerated his thoracic aorta. Dr. Mel B. Welborn testified that the blood elot which formed around the puncture in the aorta was unstable and could have "blow[n] apart at any moment." Dr. Wel-born described the wound as a "killing wound" and testified that after the surgery was performed the victim died. Clearly there was sufficient evidence from which the jury could infer beyond a reasonable doubt that the victim's death was the result of the gunshots fired by appellant.
The trial court is in all things affirmed.
All Justices concur.