**Nathaniel JONES, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 49S00–8611–CR–958.

Supreme Court of Indiana.

June 1, 1988.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appel-lee.

PIVARNIK, Justice.

Defendant–Appellant Nathaniel Jones was charged with one count of Burglary, a class A felony, two counts of Attempted Murder, class A felonies, and two counts of Battery, class C felonies. Pursuant to his waiver of jury, Jones was tried before the court. He was convicted on the burglary and battery charges and one of the attempted murder charges. He received a sentence of thirty (30) years to the Indiana Department of Corrections. His Motion to Correct Errors was denied, and he appealed directly to this court.

Jones raises the following issues on appeal:

1. insufficient evidence to support the conviction of attempted murder; and

2. trial court error in refusing to admit certain hearsay testimony.

The facts most favorable to the verdict show that on August 25, 1985, Jones visited Zerlene Harvey's home in Indianapolis to see his child. Harvey and Jones previously lived together, and Harvey is the mother of Jones's child. While at Harvey's home, Jones argued with Harvey's present boyfriend, Brian Quarles. Testimony at trial indicated Jones carried a razor and threatened Quarles with it; Quarles retaliated by hitting Jones with a heavy wooden stick. Harvey's cousin, Reginald, intervened and broke up the fight. Apparently Jones threatened to kill both Quarles and Harvey.

Upset by the fight, Harvey called the police. Jones was escorted out of the home, but returned twice the same evening. Harvey locked the doors to her home before she and Quarles retired for the evening, at approximately 11:30 p.m. They were awakened by a man wielding a heavy wooden stick or a baseball bat. Their assailant struck Harvey and Quarles numerous times. Harvey sustained a broken leg and arm, and bruises and lacerations on her head, arms, and legs. Quarles sustained severe head injuries and was hospitalized for a week. He was forced to undergo plastic surgery to allow some of his broken facial bones to be wired together. He continued to suffer dizzy spells related to his head injuries.

I

The first issue Jones presents for our review is whether the evidence was sufficient to sustain his conviction. Specifically, he challenges whether the State adequately proved he intended to kill Brian Quarles and whether the State established his identity as the perpetrator of the charged crimes.

The standard by which this court reviews sufficiency of the evidence is well-settled; we neither reweigh evidence nor judge the credibility of the witnesses. We look to the evidence most favorable to the verdict and

determine whether there is substantial evidence of probative value on each element of the offense. If there is such evidence, the verdict will not be disturbed. *Tyra v. State* (1987), Ind., 506 N.E.2d 1100, 1102. The crime of attempt is delineated in IC 35–41–5–1, which states, in part: "Sec. 1. (a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." The crime of murder is defined under IC 35–42–1–1 in pertinent part: "Sec. 1. A person who: (1) knowingly or intentionally kills another human being; or (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony."

■ Jones correctly states that the State must prove he acted with the specific intent to kill in order to establish the element of intent in attempted murder. *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507, 509. The necessary intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Id.* citing *Jackson v. State* (1978), 267 Ind. 501, 371 N.E.2d 698. *See also Burgess v. State* (1984), Ind., 461 N.E.2d 1094, 1099. Clearly, the injuries sustained by both victims, particularly Quarles, indicate the heavy wooden stick wielded in the manner it was, could have caused their deaths.

■ Also while there may be somewhat varying definitions of what conduct actually constitutes an attempt, there is fundamental agreement on the two necessary elements. They are: 1) the defendant must have been acting with a specific intent to commit the crime, and 2) the defendant must have engaged in an overt act which constitutes a substantial step toward the commission of the crime. *Zickefoose*, 388 N.E.2d at 510; *Niece v. State* (1981), Ind., 421 N.E.2d 1109. What constitutes a substantial step must be determined from all the circumstances of each case, and the conduct must be strongly corroborative of the firmness of the defendant's criminal intent. *Zickefoose*, 388 N.E.2d at 510. Whether a substantial step has occurred is a question of fact to be determined by the trier of fact. *State v. Lewis* (1981), 429 N.E.2d 1110, 1116. Also, the trier of fact may draw reasonable inferences from the direct or circumstantial evidence and a guilty verdict may be based on circumstantial evidence alone. *Johnson v. State* (1983), Ind., 455 N.E.2d 932, 936.

■ In the present case, there is sufficient evidence to support Jones' conviction for attempted murder. The trial court could have inferred from Jones' other threats to Quarles and Harvey earlier in the day and his use of the stick which caused such serious bodily injury, that Jones intended to kill Brian Quarles. As previously noted, the stick is the deadly weapon from which the court inferred the necessary intent, and the substantial step taken is the beating itself.

■ In the second part of his sufficiency argument, Jones challenges the State's identification of him as the perpetrator of the crime. He claims that because the evidence against him is wholly circumstantial, it cannot support his conviction. However, his claim the identification evidence against him is wholly circumstantial is not accurate. Both victims Harvey and Quarles identified Jones as the one who had beaten them. Jones defends against this evidence by pointing to inconsistencies in the victims' testimony, and argues the strong alibi evidence at trial undermines his conviction. This court stated in *Griffin v. State* (1986), Ind., 493 N.E.2d 439, 443, that alibi evidence is merely rebuttal evidence aimed at negating the State's evidence which identifies the defendant who committed the crime. The credibility of alibi testimony is a matter for the jury to determine.

Jones points out that at one time or another both Harvey and Quarles had stated they were not able to recognize who was beating them. They did state however, they recognized Jones' clothing and general appearance, because he had been in the residence prior to the beating. In court

both witnesses testified they were sure it was Jones who assaulted them with a stick or bat. Harvey testified that before he left the house she grabbed him and begged him not to kill her and Quarles, and while doing so, looked directly into his face and saw it was Jones. Also, Jones' fingerprints were found on a glass pane broken from the door which appeared to be the assailant's point of entry. He pointed out he had been in that residence a great many times and his fingerprints probably were all over, and therefore did not have the probative value the state assigned to them. The fact they appeared on the glass pane used for entry was for the trier of fact to consider. All of the evidence, both direct and circumstantial, reasonably supported the trial court's finding Jones guilty beyond a reasonable doubt. *Redd v. State* (1984), Ind., 461 N.E. 2d 1124; *Brown v. State* (1981), Ind., 421 N.E.2d 629; *Gilmore v. State* (1981), 275 Ind. 134, 415 N.E.2d 70.

### II

■ Jones next argues the trial court erred in excluding the investigating officer's testimony regarding the victim's brother's out-of-court statement. Apparently Clarence Harvey made a statement during Officer Dunn's investigation of the case which the defense sought to introduce at trial. However, Clarence Harvey was unavailable for cross-examination, and the trial court excluded it as hearsay.

Hearsay evidence is, of course, testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, its value resting upon the credibility of the out-of-court asserter. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, 484. Jones claims the statement was not offered for the truth of the matter asserted, but rather to prove the fact of the utterance. The following questions, objections, and responses which occurred at trial are pertinent to Jones' argument:

Q. Okay. Now, do you recall talking with Mrs. Harvey's brother named Cleveland Harvey sometime in April, March or April of this year?

A. Yes. A man came in, yes, I do recall.

Q. Do you recall the conversation that took place between you and Cleveland Harvey?

A. Yes. He came into my office with you and stated—

MR. BRANSDORFER: Objection, Your Honor. This is hearsay.

THE COURT: A hearsay objection, Mr. Hawkins. Do you have any response to that?

MR. HAWKINS: Yes, sir. He is the investigating officer, and it was his duty to investigate this case, and part of this investigation, Your Honor, was to speak with anybody that had some kind of knowledge of what took place, and he's going to testify, if the Court allow him, (sic) information that is very pertinent to this case, and the person he would testify to is unable to be found, a Mr. Cleveland Harvey. He has been subpoenaed, but I guess from pressure from his family or what have you, either left the city or what have you, and he is the only person other than the prosecutor, who was present when Mr. Harvey gave testimony concerning this case.

THE COURT: Gave testimony? Under, under—

MR. HAWKINS: Well, gave statements.

THE COURT: Gave a statement?

MR. HAWKINS: Yes, sir.

THE COURT: Is that right, Mr. Bransdorfer?

MR. BRANSDORFER: The only persons present were Det. Dunn and myself and Cleveland Harvey.

MR. HAWKINS: And Attorney Hawkins.

MR. BRANSDORFER: And—I'm sorry, yes, and, and Mr. Hawkins.

THE COURT: Well, I think as much as I sympathize with your argument, Mr. Hawkins, none of that touches the legal admissibility of the hearsay testimony because the witness is not here.

He not, would not be subject to cross examination, so I have to sustain the objection.

There is no showing by Jones what the testimony of the witness would have been. The proper course at trial would have been for defense counsel to make an offer to prove. *Mitchem v. State* (1986), Ind., 503 N.E.2d 889, 893; *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31. The record shows no such offer being made. The defendant has the burden of showing his substantial rights were prejudiced. *Rebstock v. State* (1983), Ind., 451 N.E.2d 1083, 1086; *Smith v. State* (1982), Ind., 432 N.E.2d 1363, 1368. He has failed to do so.

Finally, the State and Jones point out that the trial court convicted Jones of Count III, attempted murder of Brian Quarles. The trial court apparently concluded that Jones was guilty of battery, a class C felony, as an included offense of attempted murder with respect to Count II, attempted murder of Zerlene Harvey. In addition, Jones was adjudged guilty of Counts IV and V, battery against both Quarles and Harvey. The court then committed Jones to two five year terms of imprisonment on the two battery charges, which a review of the information in Counts I and II shows are the same offense. This is contrary to limitations imposed by Indiana Constitution, Art. I, § 14, and the Fifth Amendment, U.S. Constitution, Double Jeopardy Clause. The battery conviction in Count II of this cause is therefore vacated.

In all other respects, the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.