666 P.2d 1074

The STATE of Arizona, Appellee,

v.

Robert Dale MUMFORD, aka Robert Dale Freeman, Appellant.

No. 2 CA–CR 2601.

Court of Appeals of Arizona,
Division 2.

Dec. 1, 1982.

Rehearing Denied Feb. 18, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman, Asst. Public Defender, Tucson, for appellant.

OPINION

HOWARD, Chief Judge.

Appellant, indicted for kidnapping, sexual assault and attempted robbery with a prior conviction of breaking and entering, was found guilty by a jury on all counts. He admitted the prior conviction during his testimony at trial. Appellant was sentenced to concurrent prison terms of 10.5 years each on the kidnapping and assault conviction and three years on the attempted robbery. The minute entry of the sentencing on January 21, 1982, shows that he was convicted of "armed" robbery instead of attempted robbery. We shall correct this error in our disposition.

The victim in this case was a 78-year-old woman who lived on the fourth floor of the Martin Luther King Apartments in Tucson. On August 11, 1981, she opened the front door of her apartment to do some laundry. Appellant was standing in the doorway. He told her he was looking for "Charlie." When she told him that no "Charlie" was there, he grabbed her and shoved her back into the apartment, closing the door behind him. He then pushed her into the bedroom and raped her.

After raping her, he asked her for money several times and went to the living room to use the telephone. The victim, who had a heart condition, moved haltingly toward the front door as she sought her medicine. She heard a knocking on the door and managed to open it just before collapsing. At

the door was Mr. Corey whose apartment was directly across the hall from the victim's and his friend, a Mrs. Rosado. Rosado and Corey had been grocery shopping. When they returned Corey lay down and fell asleep. Rosado heard some loud knocking and looked out through the peep hole. She observed appellant push back the victim, enter the victim's apartment and slam the door. She woke up Corey and about ten or fifteen minutes later they both went over to the door of the victim's apartment.

When the door of the victim's apartment was opened, Corey and Rosado saw appellant with the telephone in his hand. As he put the telephone down and went out the door, Corey asked "What's going on here?" and appellant said "I'm looking for Charlie." Appellant then entered the elevator and departed the apartments. Rosado called the police and after they arrived, Corey and Rosado gave the police appellant's description. Corey, in particular, noted that appellant was wearing a blue T-shirt with the white letters "U of F" on it.

Officer Steve Mesich was at a nearby park when he received a description of the rapist just as appellant walked past him. He stopped appellant and gave him his Miranda warnings. Appellant was wearing the clothing described by Corey and Rosado and had on a T-shirt with the white letters "U of F" on it. Appellant told Mesich he had just come from the Martin Luther King Apartments and that he was leaving town. He stated that he was looking for "Charlie" to buy a car. Corey was taken to the park to view appellant and upon seeing a side view of appellant at the park, Corey could only say that on a scale of 1–10 his identification of appellant as the man in the apartment was a five on the scale. However, when appellant turned and faced Corey and he saw the U of F T-shirt, Corey was from eight to ten on the scale as to his certainty in identifying appellant.

After a second series of Miranda warnings, appellant identified himself as Robert Freeman and admitted that he had been at the apartments but only on the first floor.

Appellant testified at the trial. When asked how he got to Tucson he said that he was en route from San Diego to Las Vegas and took a wrong turn on the freeway. He had been in town for a couple of weeks because he experienced car trouble and met some man in a "smoke shop" who told him that a man named "Charlie" might be willing to trade cars. This "Charlie" allegedly lived in apartment 41 at the Martin Luther King Apartments. According to appellant he went to the first floor of the building and knocked on the door of 104. Although he could not find "Charlie" he encountered another man in the lobby who he said was wearing clothes and a sweatband virtually identical to his. Appellant testified that the other man was a little shorter and had the letters "U of A" on his blue shirt. Appellant stated that he told the detectives about the other man dressed similar to him. However, in rebuttal, Detective Hill testified that appellant never mentioned another man wearing similar clothing.

Appellant contends it was reversible error to require him to remain in the courtroom during the Dessureault hearing since appellant indicated that he did not wish to be present during the hearing. He also contends that the trial court erred in failing to give his requested instructions on identification evidence. We affirm.

■ After opening statements were made at the trial, appellant requested that there be a Dessureault hearing in order to determine whether or not the in-court identification by the witnesses was tainted by unduly suggestive pretrial procedures. See *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), cert. den'd 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). He requested to be absent during this hearing since he did not want the witnesses' identification to be reinforced by seeing him in the courtroom. The trial court refused to excuse him and appellant now contends that he had an absolute right to be absent. We do not agree. The defendant has a right to be present at every stage of the trial. Rule 19.2, Arizona Rules of Criminal Procedure, 17 A.R.S. He may waive that right. *State v. Tamplin*, 126 Ariz. 175, 613 P.2d 839

(1980). This does not mean, however, that the trial court must accept his waiver. We believe the case of *People v. Winship,* 309 N.Y. 311, 130 N.E.2d 634 (1955) correctly sets forth the rule that governs in this case:

"Section 356 of the Code of Criminal Procedure requires that the defendant must be personally present at the trial. Although he may waive this right to be present in court, *People v. La Barbera,* 274 N.Y. 339, 8 N.E.2d 884, nevertheless the People have the right to require his presence for the purpose of identification by its witnesses. A defendant must obtain the permission of the Trial Judge to be absent from a trial. *Barnett v. Russell,* 299 Ky. 242, 185 S.W.2d 261; *State v. Johnson,* 82 Kan. 450, 108 P. 793, 27 L.R.A., N.S., 943. The orderly administration of a trial requires this. The Trial Judge 'must have the power at all times to keep the prisoner within sight of the court, the jury, the counsel, and the witnesses.' *People v. Gardner,* 144 N.Y. 119, 128, 38 N.E. 1003, 1005, 28 L.R.A. 699. Therefore, the refusal of the trial court to grant the motion of the defendant to remain outside the courtroom was not an abuse of discretion, or a denial of a statutory or constitutional privilege." 130 N.E.2d at 635.

■ Appellant contends that the trial court erred in not giving his proposed instructions 6, 7 and 8 which were special instructions dealing with the issue of eyewitness identification. The trial court instructed the jury on the burden of proof and also instructed it as follows:

"Now, you, the jury, must decide the accuracy of each witness' testimony. You take into account such things as the witness' ability and opportunity to observe, and the witness' memory while testifying, their manner while testifying, and any motive or prejudice that the witness might have, and any inconsistent statements that the witness might have made.

You consider each witness' testimony in the light of all the evidence in the case."

The instructions requested by appellant and refused by the trial court are as follows:

"The prosecution must prove beyond a reasonable doubt not only that the offense was committed as alleged in the indictment but that the defendant was the person who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him.

In this regard, you should scrutinize carefully all the evidence relating to identity. You may consider all the circumstances surrounding a witness' initial observation of the alleged assailant, including the physical and emotional condition of the witness at the time, the length of time of the observation, and the conditions attending the observation, such as the lighting. You may also consider the amount of time that elapsed before any identification of the defendant by the witness was made and all the circumstances relating to the identification.

You may consider the manner in which the police presented photographs to the witness, the validity of any composite drawings, and the manner in which any lineups were conducted." (No. 6)

"You, as jurors, are instructed that:

1. Evidence of identity should be as certain as human recollection under the most favorable circumstances will permit.

2. The two greatest constituents of the reliability of such testimony are familiarity with the person in question and freedom from personal or party prejudice. After such familiarity and freedom from prejudice have been determined, it is the duty of the jury to estimate the capacity of the witness for perception, observation, reflection, memory, and reasoning, as revealed by him upon the stand." (No. 7)

"You, as jurors, are instructed that:

1. Certainty of identification may indicate, not strength, but weakness of the power to identify and of the reliability of the witness.

2. The identity of the defendant as the culprit must be shown with such cer-

tainty as to preclude any possibility of error.

3. An opinion of the identity of the defendant, particularly when it depends upon impressions obtained in haste and excitement, should be treated with the utmost caution." (No. 8)

The trial court did not err in refusing to give appellant's instructions. In *State v. Valencia*, 118 Ariz. 136, 575 P.2d 335 (App. 1977) we held that the trial court, under circumstances similar to those here, had no duty to give a special eyewitness identification instruction. We also noted that in giving instructions that had been approved by federal courts one must be particularly cautious because federal judges may comment on the evidence whereas such comment is constitutionally prohibited in Arizona. Defendant's Requested Instruction No. 6 is adequately covered by the instruction given by the trial court. The specific matters contained in the instruction are more appropriately the subject of argument than the subject of a jury instruction. As far as Defendant's Requested Instruction No. 7 is concerned, we note that it relies partially on federal cases as authority for the giving of the instruction. Part of the instruction is covered by the instructions given by the court. The rest is properly the subject of argument and we, frankly, do not know whether it is true or not that "the two greatest constituents of the reliability of such testimony are familiarity with the person in question and freedom from personal or party prejudice."

As for Defendant's Requested Instruction No. 8, it also relies on federal cases and constitutes a comment on the evidence.

The question of the evidence of eyewitness identification is more properly the subject of argument of counsel and not a jury instruction.

The judgment of conviction showing appellant guilty of armed robbery is amended to show a conviction of attempted robbery and the convictions as amended and the sentences are affirmed.

HATHAWAY and BIRDSALL, JJ., concur.