Michael LEAVELL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 981 S 262.

Supreme Court of Indiana.

Nov. 17, 1983.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was found guilty of Robbery resulting in bodily injury, a class A felony, Ind. Code § 35–42–5–1 (Burns 1979), found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1982), and sentenced to a total of eighty (80) years imprisonment.

In this direct appeal, the Defendant raises ten (10) issues which have here been consolidated into six (6) issues:

(1) Whether the trial court erred in denying Defendant's motions for mistrial and continuance based upon the midtrial change of plea to guilty by two co-defendants and their decision to appear as witnesses and to testify against him;

(2) Whether the trial court erred in admitting into evidence various state's exhibits;

(3) Whether the trial court erred in denying Defendant's motion for a directed verdict;

(4) Whether the trial court erred in denying Defendant's motion for a mistrial based upon publicized remarks of the Prosecutor;

(5) Whether the trial court erred in permitting Defendant's former attorney to testify during the habitual offender proceedings;

(6) Whether the trial court erred in admitting into evidence certified copies of docket sheets in the habitual offender proceedings.

The evidence most favorable to the State disclosed that the Defendant and three others, Anthony Owensby, James Robinson, and Van Dyson, were involved in a robbery on April 7, 1981. The victim, Malcolm Hall, testified that the Defendant and Owensby came to his home to purchase marijuana. Hall said that he had no marijuana to sell and turned to enter another room. The Defendant and Owensby followed him, and someone pushed him from behind. Hall turned and saw the Defendant holding a gun in his face.

The Defendant ordered Hall to give him the marijuana and slapped him. Hall's wife entered the room and was grabbed by Owensby, who threatened her with a hammer handle. Hall gave the Defendant $5.00, his wallet, and a watch, and he offered the Defendant his stereo if they would leave. The Defendant took the first three items and shoved Hall into a chair. As the two men were leaving, the Defendant fired two shots, one of which struck Hall in the leg.

As the men fled, Hall went upstairs and got his gun. He then ran from the house, jumped over a wall, and ran into the street where he encountered his neighbor, Nathaniel Johnson, who testified that he observed two (2) black males enter Hall's home, heard fighting and gunshots, and saw the two men walk rapidly away from Hall's house and then begin to run. Johnson walked to a nearby drive-in restaurant to call an ambulance. As he headed toward the restaurant, he encountered a deliveryman who yelled to him that the men were coming onto Washington Street; as they approached in an automobile Johnson noted the vehicle's license plate number, continued to the restaurant, wrote the number on a restaurant guest check, and telephoned the emergency "911" number.

The automobile was owned and driven by Van Dyson, who, along with James Robinson, had been co-defendants but changed their pleas to guilty, after trial had com-

menced, and agreed to testify against the Defendant as a part of a plea bargain agreement. Dyson testified that he, Robinson, Owensby, and the Defendant had discussed a plan to obtain or "rip-off" marijuana from Hall. Dyson also testified that the gun, State's Exhibit # 1, had been passed around among the four in his car, prior to the robbery.

Robinson, the other former co-defendant, who also testified pursuant to the plea bargain agreement, testified that a plan to rob Hall of marijuana had been discussed by the four, that the gun, State's Exhibit # 1, was his, that he had given it to the Defendant to use in the robbery, and that the gun was returned to him by the Defendant after the incident.

\*   \*   \*   \*   \*   \*

### ISSUE I

The Defendant contends that the trial court erred in denying his mistrial motion after Robinson and Dyson changed their pleas to guilty and agreed to testify against him. He claims that he was unduly prejudiced by the absence of his two former co-defendants in court. This, he argued, could be viewed as an admission of guilt by them and imputed to him. The Indiana Court of Appeals has held that the change of a plea by a co-defendant does not occasion substantial prejudice to the remaining defendants' rights. *Webb v. State,* (1980) Ind.App., 403 N.E.2d 359, 360; *Winker v. State,* (1977) 174 Ind.App. 258, 261, 367 N.E.2d 26, 28.

■ The proper inquiry is whether, under all of the circumstances, the defendant was deprived of a fair trial by the prejudice allegedly arising from a change of plea. *Webb v. State,* 403 N.E.2d at 361. Among the circumstances to be considered in determining whether a co-defendant was deprived of a fair trial are "the strength of the evidence of guilt and the sufficiency of the cautionary instruction if one is given." *Scott v. State,* (1980) Ind.App., 409 N.E.2d 1184, 1188 (reh. den.), quoting *Webb v. State,* 403 N.E.2d at 361.

■ Following the denial of Defendant's motion for a mistrial, the trial judge gave the following instruction to the jury:

"I'm going to read to you an intermediate instruction. Ladies and gentlemen of the jury, as I instructed you at the onset of this trial and will again at the conclusion, you should give separate consideration to each defendant. Each is entitled to have his case decided upon the evidence and the law applicable to him. Any evidence which is limited to one or some of the defendants, should not be considered by you as to any other defendant. You will notice that two of the defendants, Van Dyson and James Robinson are no longer present at the trial. You must not concern yourselves with the reasons why they are no longer here and you must continue to hear the evidence and decide each of the remaining defendants' cases on the evidence, without regard to the two defendants who are no longer participating."

In light of this instruction and all of the evidence presented against the Defendant at trial, the effect of any inference that the jury might have drawn from the absence of Dyson and Robinson could not have been consequential.

Defendant's argument that in light of the turn of events at the trial the court erred in denying his motion for a separate trial, pursuant to Ind.Code § 35–3.1–1–11(b) (Burns 1979) is without merit. The fact that it appears, in retrospect, that it would have been preferable not to have joined these defendants for trial does not affect the propriety of the court's ruling which was correct at the time it was made.

■ Defendant further claims that he was surprised by Dyson and Robinson's change of plea and their agreement to testify for the State and that, consequently, he was unprepared. His motion for a continuance was properly denied, however. The denial of a motion for continuance based upon a ground not stated in Ind.Code § 35–1–26–1 (Burns 1979) will not be disturbed on appeal, unless the trial court abused its discretion, *Spivey v. State,* (1982)

Ind., 436 N.E.2d 61, 64; Ind.R.Tr.P. 53.5, and there is a showing from the record that the defendant was prejudiced. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986, 992; *Maier v. State,* (1982) Ind., 437 N.E.2d 448, 451; *Downer v. State,* (1982) Ind., 429 N.E.2d 953, 954. Even with a showing of surprise, the defendant must show that he was harmed by the denial of his motion for continuance. *Hardin v. State,* (1981) Ind., 414 N.E.2d 570, 573; *King v. State,* (1973) 260 Ind. 422, 426, 296 N.E.2d 113, 115. Further, the Defendant did not claim that a continuance would have enabled him to refute or discredit the testimony of either Robinson or Dyson or, otherwise, demonstrate the manner in which additional time would benefit him.

The Defendant has failed to show that he was prejudiced by the trial court's denial of the motion for continuance or that the trial court abused its discretion in denying that motion. We find no error.

### ISSUE II

Defendant contends that the trial court erred in admitting State's exhibits numbered 1, 2, 3, 4, 6, 11, and 12: a gun, a hammer handle, a cellophane cigarette wrapper, a mutilated bullet, a chart of the interior of the victim's home, and a photocopy of Defendant's waiver of rights form.

The gun was admitted into evidence after the following exchange between the Prosecutor and Witness Robinson:

"Q. Let me hand you this gun one more time. State's Exhibit No. 1. That's your weapon?

"A. Yes, it is.

"Q. That's the one that you gave to Mike Leavell?

"A. Yes.

"Q. That's the one he gave you when he got back in the car after the shooting?

"A. Yes.

"Q. And he admitted shooting Malcolm Hall?

"A. Yes." (R. at 532)

The Defendant first asserts that the gun was irrelevant evidence; he claims that he admitted shooting Hall, although he asserts he did so in self defense with his own gun, not the gun admitted into evidence. Further, he argues that the gun had no probative value on the issue of whether a robbery occurred.

Evidence is relevant if it has a logical tendency to prove or disprove a material fact. *Pitman v. State,* (1982) Ind., 436 N.E.2d 74, 77; *Armstrong v. State,* (1982) Ind., 429 N.E.2d 647, 651; *Holland v. State,* (1980) Ind., 412 N.E.2d 77, 80; *Johnson v. State,* (1980) 272 Ind. 547, 400 N.E.2d 132, 133. The gun was relevant to show the Defendant's access to a gun.

A further basis for Defendant's objection was that an adequate foundation for its admission had not been laid. This Court has held that the fact that evidence is inconclusively connected to a defendant goes to the weight of the evidence, not to its admissibility. *Johnson v. State,* 400 N.E.2d at 133; *Carman v. State,* (1979) 272 Ind. 76, 396 N.E.2d 344, 346. Further positive proof or positive identification of the evidence is not required prior to its admission. *Johnson v. State,* 400 N.E.2d at 133; *Elliott v. State,* (1972) 258 Ind. 92, 96, 279 N.E.2d 207, 209.

Defendant next argues that the hammer handle should not have been admitted into evidence because there had not been a sufficient foundation laid nor a sufficient chain of custody shown to warrant its admission.

Freema Hall, the victim's wife, testified that Defendant Owensby threatened her with a hammer handle. Mrs. Hall stated that the exhibited hammer handle looked like the one with which she had been threatened and which had been found in her yard shortly after the incident. Officer Drook also testified that the hammer handle looked like the one he picked up in the Halls' yard and specifically noted the distinctive spot on the end of the handle.

It was not mandatory for the witnesses to identify this hammer handle posi-

tively as the one with which Mrs. Hall was threatened or as the one found in the Halls' yard. *Johnson v. State,* 400 N.E.2d at 133. The guilt or innocence of the Defendant in no way depended on the identification of this exhibit specifically as the one used; thus, there was nothing prejudicial to the Defendant arising from its admission into evidence. The jury weighs the probative value of the properly admitted evidence. *Id.*

▮ With respect to the chain of custody challenge Defendant's counsel did not object to the admission of the exhibit upon those grounds at trial. (R. at 365, 366). He cannot now assert grounds different from those raised at trial. *Hernandez v. State,* (1982) Ind., 439 N.E.2d 625, 629; *Smith v. State,* (1979) 272 Ind. 328, 397 N.E.2d 959, 963. Nor can he rely upon a co-defendant's objection so grounded but in which he did not join. *Scott v. State,* (1980) Ind.App., 409 N.E.2d 1184, 1187 (rehearing denied). Had Defendant objected at the trial upon the grounds here urged, such objection, nevertheless, would have been properly overruled, but there is no need for us to treat the matter further.

▮ With respect to the cellophane wrapper and the bullet, Defendant made no objection to their admission at trial. This assignment of error, therefore, is not available on appeal. *Owens v. State,* (1981) Ind., 427 N.E.2d 880, 885. Neither was either of these exhibits subject to exclusion upon the grounds here argued.

▮ With respect to the chart depicting the interior of Hall's home, Defendant argues that it was admitted into evidence without a proper foundation having been laid. However, Malcolm Hall, the victim, testified that the chart was an accurate representation of the interior of his home. A police officer also testified that the chart was accurate. Not only did Defendant's counsel fail to object to this exhibit, he specifically stated, "No objection, your Honor." This assignment is not available on appeal.

▮ Finally, with respect to the admission of the photocopies of Defendant's waiver of rights form, Defendant asserts that their admission violated the best evidence rule. Inasmuch as Defendant concedes that photocopies are admissible into evidence, unless a genuine issue is raised as to the authenticity of the original, *Wilson v. State,* (1976) 169 Ind.App. 297, 304, 348 N.E.2d 90, 95, (transfer denied), and that the business records exception regarding photocopies embodied in Ind.Code § 34–3–15–1 (Burns 1979) authorized the admission of the exhibits, and he offers no valid reason for a change in such procedures, we find no merit to this assignment.

## ISSUE III

The Defendant contends that inasmuch as the evidence presented that property had been taken was insufficient, the trial court erred in denying his motion for a directed verdict.

In *Page v. State,* (1980) Ind., 410 N.E.2d 1304, 1306–1307, we stated our standard for evaluating the refusal of the trial court to grant a directed verdict:

> "In order for the State to avoid a judgment on the evidence, a mere *prima facie* case must be demonstrated. In other words, a judgment on the evidence is appropriate only where there is an absence of evidence upon some essential element or if the evidence is without conflict and is susceptible to but one inference which inference is in favor of the accused." (citations omitted).

▮ Here the evidence made out a *prima facie* case of robbery. Both Hall and his wife testified that the Defendant took $5.00, Hall's wallet, and his watch. It is true that those items were never recovered; however, the recovery of stolen property and its production at trial are not essential to prove that a robbery was committed or that the accused committed it. *Mitchell v. State,* (1977) 172 Ind.App. 294, 297, 360 N.E.2d 221, 223 (transfer denied); *Jackson v. State,* (1971) 257 Ind. 477, 481, 275 N.E.2d 538, 541.

Defendant's contention that the Halls' testimony was inherently incredible and unworthy of belief because they had engaged in marijuana sales is not an issue for our review. In a review of rulings by the trial court on motions for a directed verdict we do not judge the credibility of the witnesses. *Russell v. State,* (1982) Ind., 438 N.E.2d 741, 743.

It cannot be said that there was an absence of evidence upon the element of taking or that the evidence was without conflict and inferences therefrom favored the Defendant; consequently, the trial court did not err in denying the Defendant's motion for a directed verdict.

### ISSUE IV

Defendant's motion for mistrial was predicated upon the publicizing of the news that Dyson and Robinson, his co-defendants, had changed their pleas to guilty and would testify for the State, which, he contends, prejudiced the jury. He further argues that the court's instruction on the issue and its interview with each juror in Chambers were insufficient to eliminate the prejudice. In fact, Defendant contends that the procedures used to ascertain whether the jury had been influenced by the publicity necessarily had the effect of subjecting him to grave peril by focusing the jury's attention on the change in status of Dyson and Robinson.

In *Lindsey v. State,* (1973) 260 Ind. 351, 295 N.E.2d 819, we stated the proper procedure to be followed in a case such as this:

"Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessi-

ty for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of 'no exposure.' If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial. Obviously, if at any stage the court believes the peril to be substantial and uncurable, it should declare a mistrial sua sponte. At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction." *Id.* 295 N.E.2d at 824.

The trial judge took two ameliorative measures to insure that the jury had not been biased by the broadcasts. First, he conducted an individual interview with each juror in which he determined that not one had heard the radio broadcast. Further, he gave the following cautionary instruction:

"Let me remind each of you that there may be publicity in newspapers, on radio, or on television concerning this trial. I must remind you again not to read or listen to these accounts and to confine your attention to the Court proceedings, listen attentively to the evidence as it comes from the witnesses, and reach a

verdict solely upon what you hear and see in this Court."

The trial judge followed the proper procedure, and the Defendant has failed to show that his fair trial rights had been jeopardized.

## ISSUE V

Defendant's former attorney identified him in the Habitual Offender proceedings. He argues that the relationship between him and his former attorney precluded the attorney from testifying as to his identity, inasmuch as their relationship was protected by the Attorney/Client privilege.

Defendant admits that this issue was recently decided by this Court in *Washington v. State*, (1982) Ind., 441 N.E.2d 1355, in which we approved the giving of such testimony by prior counsel, so long as the testimony does not reveal confidential communications or secrets of the former client. The attorney is permitted to testify as to the existence, nature and date of a defendant's prior conviction, matters which are documented in the public record. *Id.* at 1358, 1359. Defendant urges us to reconsider our position, but he has not presented any compelling reason for us to do so. Our holding in *Washington* controls this issue.

## ISSUE VI

The trial court allowed State's Exhibits Numbered 2 and 3, copies of order book entries regarding cases in which the Defendant had been convicted and sentenced for two prior unrelated felonies, to be admitted into evidence in the habitual offender phase of the trial, and Defendant argues that the best evidence rule requires that the order book itself should have been placed into evidence.

Again, Defendant acknowledges this Court's holding in *Anderson v. State*, (1981) Ind., 426 N.E.2d 674, 678, approving the admission of certified copies of court records into evidence, after an official record keeper has read and attested to the records of the prior unrelated felony convictions.

The approved procedure was followed in the case at bar.

Defendant contends that the severity of the habitual offender sanction requires that the original records be placed into evidence. Such a requirement would be a substantial burden to the prosecution and to the court and would not contribute to error-free proceedings. *See also Griffin v. State*, (1981) Ind., 415 N.E.2d 60, 65; *Collins v. State*, (1981) Ind., 415 N.E.2d 46, 53, *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.