Rumero W. **ZIEBELL**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0206–CR–229.

Court of Appeals of Indiana.

May 27, 2003.

John D. Clouse, Ivan A. Arnaez, Evansville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Rumero W. Ziebell appeals his convictions for murder,[1] conspiracy to commit murder as a class A felony,[2] confinement as a class B felony,[3] battery as a class C felony,[4] and his status as an habitual offender.[5] Ziebell raises eight issues, which we consolidate and restate as:

1. Ind.Code § 35–42–1–1 (1998).

2. Ind.Code § 35–41–5–2 (1998).

3. Ind.Code § 35–42–3–3 (1998).

4. Ind.Code § 35–42–2–1 (Supp.2000).

5. Ind.Code § 35–50–2–8 (1998).

I.   Whether the trial court abused its discretion by admitting photographs of the crime scene and injuries to the victim;

II.  Whether the trial court abused its discretion by admitting evidence of Ziebell's prior drug dealing;

III. Whether the trial court abused its discretion by denying Ziebell's motion for a mistrial regarding evidence of his prior drug dealing;

IV.  Whether the habitual offender statute, Ind.Code § 35–50–2–8, is unconstitutional because it punishes Ziebell for his status and because it violates the prohibition against double jeopardy;

V.   Whether the trial court abused its discretion by requiring Ziebell's presence during the habitual offender phase of the trial;

VI.  Whether the trial court abused its discretion by permitting Ziebell's prior counsel to testify regarding Ziebell's identity during the habitual offender phase of the trial; and

VII. Whether the trial court committed fundamental error by commenting upon Ziebell's failure to testify.

We affirm.

The relevant facts follow. On March 19, 2001, the State charged Ziebell with three counts of dealing in methamphetamine and one count of dealing in marijuana. Ziebell thought that a "snitch" named Mackey was involved in the charges. Transcript at 116. In fact, Mackey was not the confidential informant. However, in late May of 2001, Ziebell told Al Gross and Dean Everett that he wanted to kill Mackey and offered Gross or Everett $1500 to do so. Everett agreed to kill Mackey.

On May 27, 2001, Everett and Ronald Mackey were driving in Mackey's van.

The evidence at trial demonstrated that Ziebell, Everett, and Gross actually intended to kill Dallas Mackey, Ronald's brother, and mistook Ronald for Dallas. Ziebell and Gross followed the van. After stopping, Mackey was removed from the van and severely beaten. Mackey was then put back into the van, and Everett drove him to Kentucky. Everett then shot Mackey in the head with Ziebell's shotgun. Ziebell and Gross drove Everett back to Indiana. Ziebell admitted that he participated in Mackey's murder.

The State charged Ziebell with murder, conspiracy to commit murder, a class A felony, confinement, a class B felony, battery, a class C felony, and being an habitual offender. During the jury trial, the trial court admitted photographs of the crime scene and Mackey's injuries over Ziebell's objections. The trial court also admitted evidence of Ziebell's prior drug dealing over his objections and refused to grant a mistrial based upon the admission of the prior drug dealing evidence. However, the trial court admonished the jury to consider the evidence of Ziebell's drug dealing only as to motive. The jury found Ziebell guilty of murder, conspiracy to commit murder, confinement, and battery.

During the habitual offender phase of the trial, Ziebell argued that the habitual offender statute was unconstitutional because it punishes a defendant for his status and because it violates the prohibition against double jeopardy. The trial court overruled Ziebell's objections. Additionally, at the start of the habitual offender proceedings, Ziebell informed his counsel that he did not wish to be present during the proceedings. The trial court denied his request because his presence was necessary for identification purposes. The State then called Ziebell's former counsel as a witness to testify as to Ziebell's identity. Ziebell objected based upon the attor-

ney-client privilege. However, the trial court overruled his objection. Furthermore, while discussing Ziebell's objections to his former attorney testifying during the habitual offender trial, the trial court stated "since the client is not testifying. Are you objecting to this witness['s] testimony on the grounds of your client's Fifth Amendment rights?" Transcript at 350. Ziebell's counsel responded that the trial court was correct, and the trial court overruled his objection. The jury found Ziebell guilty of being an habitual offender.

The trial court sentenced Ziebell to: (1) ninety-five years in the Indiana Department of Correction for the murder conviction enhanced by Ziebell's status as an habitual offender; (2) fifty years for the conspiracy to commit murder conviction to run concurrent with the sentence for the murder conviction; (3) twenty years for the confinement conviction to run consecutive to the sentence for the murder conviction; and (4) eight years for the battery conviction to run consecutive to the sentence for the confinement conviction. Thus, Ziebell received an aggregate sentence of 123 years in the Indiana Department of Correction.

## I.

The first issue is whether the trial court abused its discretion by admitting photographs of the crime scene and injuries to the victim. Because the admission and exclusion of evidence falls within the sound discretion of the trial court, we review the admission of photographic evidence only for abuse of discretion. *Wilson v. State,* 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State,* 754 N.E.2d 502, 504 (Ind.2001).

Ziebell argues that the trial court abused its discretion by admitting the fol-

lowing photographs into evidence over his objection: (1) Exhibit 5, a photograph of the inside of the van; (2) Exhibit 6, a photograph of the shotgun lying inside of the van; (3) Exhibit 7, a photograph of Mackey's body inside the van, (4) Exhibit 9, a photograph of Mackey's left hand and head; (5) Exhibit 10, a photograph of Mackey's jacket; (6) Exhibit 11, a photograph of damage to Mackey's jacket; (7) Exhibit 12, a photograph of damage to Mackey's shirt; (8) Exhibit 14, a photograph of injuries to Mackey's head; (9) Exhibit 15, a photograph of injuries to Mackey's head and neck; (10) Exhibit 16, a photograph of an injury to Mackey's arm; (11) Exhibit 17, a photograph of injuries to Mackey's back; (12) Exhibit 18, a photograph of injuries to Mackey's right hand; and (13) Exhibit 19, a photograph of injuries to Mackey's head. Ziebell argues that the probative value of the photographs is outweighed by the danger of unfair prejudice. Ziebell does not argue that the photographs show the body in an altered condition. *See, e.g., Corbett v. State,* 764 N.E.2d 622, 627 (Ind.2002) ("Autopsy photographs are generally inadmissible if they show the body in an altered condition.").

■ Our supreme court recently noted the following with respect to the admission of such photographs:

> Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. "Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally." Photographs, even those gruesome in nature, are admissible if they act as interpretative aids for the jury and have strong probative value.

*Wilson,* 765 N.E.2d at 1272 (internal citations omitted). In *Wilson,* our supreme court held that while the photographs were "unpleasant," they "were relevant to material issues and to the testimony of the pathologist." *Id.* Thus, our supreme court "decline[d] to find abuse of discretion by the trial court in admitting them over the defendant's objections." *Id.* at 1272–1273. Likewise, here, while some of the photographs are unpleasant, the photographs depict the injuries to Mackey's body, damage to Mackey's clothing, and the condition of the crime scene where Mackey's body was discovered. The photographs were relevant to material issues in the case and to the testimonies of the pathologist and the officer who found Mackey's body. The probative value of the photographs is not substantially outweighed by the danger of unfair prejudice. Consequently, the trial court did not abuse its discretion by admitting the photographs over Ziebell's objection. *See, e.g., id.*

## II.

■ The next issue is whether the trial court abused its discretion by admitting evidence of Ziebell's prior drug dealing activities. The trial court permitted several witnesses to testify regarding Ziebell's prior drug dealing. Ziebell argues the trial court abused its discretion by admitting this evidence over his objection because the evidence was inadmissible under Ind. Evidence Rule 404(b). The trial court has discretionary power on the admission of evidence, including the admission of evidence pursuant to Ind. Evidence Rule 404(b). *Wilson,* 765 N.E.2d at 1270. We review the trial court's decision only for an abuse of that discretion. *Id.* An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith,* 754 N.E.2d at 504.

■ Ind. Evidence Rule 404(b) provides, in part, that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."

The rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." *Hicks v. State,* 690 N.E.2d 215, 218–219 (Ind.1997). In determining whether to admit evidence under Ind. Evidence Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind. Evidence Rule 403. *Id.* at 221. To determine whether the trial court abused its discretion, we employ the same test. *See, e.g., id.* at 221–223.

■ The first issue is whether the evidence of Ziebell's other crimes, wrongs, or acts is relevant to a matter at issue other than his propensity to commit the charged act. Ziebell does not argue that evidence of his past drug dealing was not relevant to a matter at issue other than his propensity to murder Mackey. Moreover, we note that the evidence was admitted to establish Ziebell's motive for the murder. Ziebell thought that Mackey was the confidential informant with respect to charges against him for dealing in methamphetamine and marijuana. "Evidence of motive is always relevant in the proof of a crime." *Wilson,* 765 N.E.2d at 1270. Consequently, evidence of Ziebell's past drug dealing was relevant to a matter at

issue other than his propensity to commit the charged act.

Pursuant to *Hicks*, we must also determine whether the trial court abused its discretion in balancing the probative value of the evidence against its prejudicial effect under Ind. Evidence Rule 403. Ind. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Ziebell does not dispute that the evidence was probative to demonstrate Ziebell's motive to kill Mackey. However, Ziebell argues that the evidence is highly prejudicial.

■ Our supreme court recently considered the admission of a defendant's drug dealing and prostitution-related activities during the defendant's trial for murdering an alleged drug user and prostitute. *Wilson*, 765 N.E.2d at 1268–1271. There, our supreme court declined to find an abuse of discretion where "the trial court clearly recognized and carefully evaluated the probative value of the disputed evidence and the danger of unfair prejudice." *Id.* Similarly, in this case, while the evidence that Ziebell was a drug dealer may have been prejudicial, we cannot say that the probative value of the evidence regarding his motive to kill Mackey was substantially outweighed by the prejudice. Thus, the trial court did not abuse its discretion by admitting the evidence regarding Ziebell's past drug dealing. *See, e.g., id.*

### III.

The next issue is whether the trial court abused its discretion by denying Ziebell's motion for a mistrial regarding evidence of his prior drug dealing. After the admission of evidence regarding Ziebell's prior

drug dealing, the trial court admonished the jury that the evidence was admitted only to show motive. Ziebell argued that an admonishment could not "cure the inference" and moved for a mistrial based upon the admission of the evidence of his prior drug dealing. Appellant's Appendix at 38. The trial court denied the motion. Ziebell argues that he was "placed in a position of great peril" by the admission of the evidence. Appellant's Brief at 13.

■ The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Francis v. State*, 758 N.E.2d 528, 532 (Ind.2001). We will reverse the trial court's determination only when an abuse of discretion can be established. *Id.* An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith*, 754 N.E.2d at 504. Moreover, "the grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Francis*, 758 N.E.2d at 532. To prevail, the defendant "must show that he was placed in a position of grave peril to which he should not have been subjected." *Id.*

■ "The premise underlying a motion for mistrial presupposes that an error of some type occurred in the first instance." *Johnson v. State*, 749 N.E.2d 1103, 1106 (Ind.2001). Here, we have found no error in the admission of the evidence regarding Ziebell's prior drug dealing. *See* supra Part II. Consequently, the trial court did not abuse its discretion by denying Ziebell's motion for a mistrial. *See, e.g., id.* (holding that the trial court did not abuse its discretion by denying a motion for a mistrial where there was no error). Moreover, "[a] timely and accurate admonition is presumed to cure any error in the admission of evidence." *Randolph*

*v. State,* 755 N.E.2d 572, 575 (Ind.2001). The trial court here admonished the jury to consider the evidence of Ziebell's drug dealing only as evidence of motive.

## IV.

■■■■ The next issue is whether the habitual offender statute, Ind.Code § 35–50–2–8, is unconstitutional because it punishes Ziebell for his status and because it violates the prohibition against double jeopardy. Whether a statute is constitutional on its face is a question of law. *State v. Moss–Dwyer,* 686 N.E.2d 109, 110 (Ind.1997). Where the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.* Statutes are presumed to be constitutional and such presumption continues unless clearly overcome by a showing to the contrary. *Myers v. State,* 714 N.E.2d 276, 280 (Ind. Ct.App.1999), *trans. denied.* We resolve all doubts in favor of a statute's constitutionality. *Id.* The burden is upon the party challenging a statute to demonstrate its unconstitutionality. *Id.*

We first address Ziebell's argument that the habitual offender statute punishes him for his status. Ziebell objected during the habitual offender portion of his trial that the habitual offender statute violated his due process rights by punishing him for his status. The trial court overruled Ziebell's objection. On appeal, Ziebell argues that "[t]he goal of the habitual offender trial is to go after persons with a certain status: two or more unrelated prior felonies. However status cannot be a ground for punishment." Appellant's Brief at 13 (citing *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), *reh'g denied).*

■■■ Our supreme court rejected this same argument in *Smith v. State,* 422 N.E.2d 1179 (Ind.1981). There, the defendant argued that "our habitual offender statute provides for the punishment of an accused based solely on his 'status' as a recidivist." *Id.* at 1186. In support of his argument, the defendant also cited *Robinson.* Our supreme court found *Robinson* "to be clearly distinguishable and not controlling on this question." *Id.* Our supreme court explained that "the habitual offender statute creates no new offense; it merely enhances the punishment for the immediate crime because 'prior sanctions have failed to deter [the defendant] from committing felonies.'" *Id.* Thus, "the habitual offender statute does not create a status offense prohibited by *Robinson v. California.*" *Id.* Consequently, Ziebell's argument fails, and the trial court did not err by overruling Ziebell's objection.

Ziebell also argues that the habitual offender statute violates the prohibition against double jeopardy. Ziebell objected during the habitual offender portion of his trial that the habitual offender statute violated the prohibition against double jeopardy. The trial court overruled his objection. On appeal, Ziebell argues that an "habitual offender trial serves to further punish the individual for past convictions." Appellant's Brief at 13–14.

■■■ The State argues that "Indiana courts have long recognized that sentence enhancements based on prior criminal convictions do not constitute multiple punishment in violation of the double jeopardy clause." Appellee's Brief at 10. We agree. Our supreme court considered this issue in *Wise v. State,* 272 Ind. 498, 400 N.E.2d 114 (Ind.1980). In *Wise,* our supreme court held that, under the habitual offender statute, "[t]he individual is subjected to the greater sentence neither for the prior crimes nor for the status of habitual offender, but rather the enhanced sentence is imposed for the last crime committed." 272 Ind. at 501, 400 N.E.2d at 117. Further, the habitual offender

sentencing is "neither a separate criminal charge nor an additional penalty for the earlier crimes." 272 Ind. at 502, 400 N.E.2d at 117. Thus, the defendant in *Wise* was not "placed in double jeopardy." *Id.* Similarly, here, Ziebell's argument fails and the trial court did not err by overruling Ziebell's objection. *See, e.g., id.*

### V.

The next issue is whether the trial court abused its discretion by requiring Ziebell's presence during the habitual offender phase of the trial. Immediately before the start of the habitual offender phase of the trial, Ziebell informed his counsel that he did not wish to be present for the habitual offender phase. The trial court denied Ziebell's request because Ziebell's presence was necessary for identification purposes. On appeal, Ziebell argues that the trial court violated his due process rights by compelling his presence during the habitual offender phase. Thus, Ziebell argues that the habitual offender proceeding is "void." Appellant's Brief at 17. The State contends that while a defendant may waive his constitutional right to be present at trial, "[t]here is no corollary right to be absent from trial." Appellee's Brief at 13. Thus, according to the State, the trial court had the discretion to deny Ziebell's request as part of the trial court's authority to conduct the trial.

■■■■ A defendant in a criminal proceeding has a right to be present at all stages of his or her trial. U.S. Const. amend. VI; Ind. Const. art. I, § 13; *Lampkins v. State*, 682 N.E.2d 1268, 1273 (Ind.1997), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind.1997). "A defendant may waive this right and be tried in absentia if the trial court determines that the defendant knowingly and voluntarily waived that right." *Id.* However, Indiana courts have not considered whether a defendant has a corollary right to be absent from his or her trial.

■■■■ Other jurisdictions have considered this issue and rejected similar arguments. For example, in *Powell v. State*, 600 So.2d 1085, 1086 (Ala.Crim.App.1992), the defendant argued that the "trial court erred by ordering him to appear in court for identification purposes during the state's case-in-chief, even though he had waived his right to be present at trial...." The Alabama Court of Criminal Appeals held that while the Alabama Criminal Rules give a defendant the right to be present at every stage of trial and permit a defendant to waive the right under certain circumstances, a trial court "need not accept accused's waiver [of his right to be present] where his presence is necessary for identification purposes." *Id.* Consequently, the court rejected the defendant's argument. *Id.; see also State v. Mumford*, 136 Ariz. 465, 666 P.2d 1074, 1075–1076 (Ariz.Ct.App.1982) (holding that although a defendant may waive his right to be present in court under the Arizona Criminal Rules, the State has the right to require his presence for the purposes of identification by its witnesses), *reh'g denied; Capwell v. State*, 686 P.2d 1148, 1156 (Wyo.1984) ("The [criminal] rule does not grant to the defendant a right of absence, and there is no due process violation should the court require his attendance at trial where identification is an integral part of the issues to be determined by the jury."). Thus, we conclude that while a defendant has a right to be present at all stages of his trial, a defendant does not have a corollary right to be absent where he is otherwise available and his presence is required for a legitimate purpose, such as identification.

■■■■ Ziebell further argues that he was prejudiced by the trial court's alleged error because the State was then allowed

to identify him. Although Ziebell does not specifically argue that his right against self-incrimination was violated, we note that:

The Fifth Amendment to the United States Constitution, as well as Article One, Section Fourteen of the Indiana Constitution, prohibit compulsion of statements or actions by a defendant which constitute communications or are testimonial in nature. The constitutional prohibitions, however, are not violated when a defendant is compelled to speak or act in a manner which makes himself the source of physical evidence. In our application of these principles, this jurisdiction has held the constitutional privilege is not violated if a defendant is compelled to provide fingerprints, a handwriting sample, or a voice exemplar; nor has this jurisdiction found a violation of the privilege when a defendant is required to stand, expose a tattoo, or exhibit his hands while in court.

*Bivins v. State*, 433 N.E.2d 387, 390 (Ind. 1982) (internal citations omitted). Thus, "the proscription against compulsory self-incrimination extends only to testimonial or communicative responses not to purely physical tests which make the accused the true source of demonstrative evidence." *Flynn v. State*, 412 N.E.2d 284, 289 (Ind. Ct.App.1980). Consequently, the trial court could compel Ziebell to be present at the habitual offender phase for identification purposes. *See, e.g., Bivins*, 433 N.E.2d at 390 (holding that the trial court did not err by compelling a defendant to "don the corduroy coat worn by the perpetrator" at trial).

We conclude that the trial court did not abuse its discretion by denying Ziebell's request because his presence was necessary for identification purposes. Although Ziebell had a constitutional right to be present during the trial, he did not have a corollary right to be absent where he was readily available for the trial and his presence was required for identification purposes. Consequently, the trial court did not abuse its discretion by denying Ziebell's request to be absent from the habitual offender proceedings.[6]

## VI.

The next issue is whether the trial court abused its discretion by permitting Ziebell's prior counsel to testify regarding Ziebell's identity during the habitual offender phase of the trial. The trial court has discretionary power on the admission of evidence, and we review its decisions regarding the admissibility of evidence only for an abuse of that discretion. *Wilson*, 765 N.E.2d at 1270. An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith*, 754 N.E.2d at 504.

Ziebell argues that the trial court abused its discretion by allowing his former attorney to testify during the habitual offender portion of the trial over Ziebell's objections. However, the State points out that Ziebell's former attorney testified only as to Ziebell's identity for purposes of establishing Ziebell's prior convictions. Thus, the State contends that Ziebell's former counsel did not reveal any confidential communications or secrets. We agree.

Our supreme court addressed a similar issue in *Leavell v. State*, 455 N.E.2d 1110, 1117 (Ind.1983). There, the defendant's former attorney identified him in the habitual offender proceedings. *Id.* The defendant argued that "the relationship between him and his former attor-

---

**6.** Furthermore, we note that Ziebell requested to be absent from the closing arguments and reading of the verdict in the habitual offender phase and the trial court granted that request.

ney precluded the attorney from testifying as to his identity, inasmuch as their relationship was protected by the Attorney/Client privilege." *Id.* Our supreme court approved of "the giving of such testimony by prior counsel, so long as the testimony does not reveal confidential communications or secrets of the former client. *Id.* The attorney is permitted to testify as to the existence, nature and date of a defendant's prior conviction, matters which are documented in the public record." *Id.*

██ Ziebell's former counsel testified only as to Ziebell's identity. Ziebell's former counsel did not reveal any confidential communications or secrets. Consequently, the trial court did not abuse its discretion by permitting Ziebell's former counsel to testify and by overruling Ziebell's objection. *See, e.g., id.*

### VII.

The last issue is whether the trial court committed fundamental error by commenting upon Ziebell's failure to testify. Ziebell argues that the trial court "commented on the defendant's failure to testify during an exchange with counsel." Appellant's Brief at 18. The record reveals that the following exchange occurred when the State called Ziebell's former attorney as a witness during the habitual offender phase of the trial:

DEFT. COUNSEL: Your Honor, at this time, I renew my objection to preserve ... the client's Fifth Amendment rights.

COURT: I'm ah, I'm not sure I understand your objection [Defense Counsel].

DEFT. COUNSEL: May I ... may we approach.

COURT: [Defense Counsel], since the client is not testifying. Are you objecting to this witness['s] testimony on the grounds of your client's Fifth Amendment rights?

DEFT. COUNSEL: Right.

COURT: Over-ruled....

Transcript at 350.

██ The trial court and the prosecutor are prohibited under the Fifth Amendment from commenting at trial on the defendant's refusal to testify. *Solomon v. State,* 570 N.E.2d 1293, 1296 (Ind.Ct.App.1991). Such a comment violates a defendant's privilege against compulsory self-incrimination if the statement "is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Boatright v. State,* 759 N.E.2d 1038, 1043 (Ind.2001).

██ Although Ziebell did not object to the comment, he argues that the trial court committed fundamental error. To rise to the level of fundamental error, an error "must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Maul v. State,* 731 N.E.2d 438, 440 (Ind.2000). In cases where the defendant argues that a prosecutor commented upon the defendant's failure to testify, our supreme court has held that "when a prosecutor's conduct subjects a defendant to grave peril and has a probable persuasive effect on the jury's decision, it may amount to fundamental error." *Boatright,* 759 N.E.2d at 1043.

██ Initially, we note that the comment was made during the habitual offender phase of Ziebell's trial. The jury had already found Ziebell guilty of murder, conspiracy to commit murder, confinement, and battery. Thus, we must determine whether the comment subjected Ziebell to grave peril and had a probable persuasive effect on the jury's decision related to Ziebell's status as an habitual

offender. The trial court's comment was simply an attempt to clarify an objection from Ziebell's counsel. A reasonable jury would not have interpreted the comment as an invitation to draw an adverse inference from Ziebell's silence. Furthermore, given the evidence of Ziebell's prior convictions presented during the habitual offender phase, Ziebell was not subjected to grave peril as a result of the comment and it is extremely unlikely that the comment had a probable persuasive effect on the jury's decision. Consequently, the trial court did not commit fundamental error. *See, e.g., Jenkins v. State*, 725 N.E.2d 66, 70 (Ind.2000) (holding that a prosecutor's comments on the defendant's failure to testify did not invite the jury to draw an adverse inference from the defendant's silence).

Additionally, the dissent raises the issue of double jeopardy arising from Ziebell's convictions for both murder and conspiracy to commit murder. The dissent believes that the conspiracy conviction should be set aside because a reasonable possibility exists that the overt act used to establish the elements of the conspiracy to commit murder conviction was also used to establish the murder conviction. We respectfully disagree.

Our supreme court has held that "[t]o establish that two challenged offenses constitute the same offense under the actual evidence test and thus violate the Indiana Double Jeopardy Clause, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Long v. State*, 743 N.E.2d 253, 260 (Ind.2001), *reh'g denied*. In *Long*, the defendant was convicted of both conspiracy to commit murder and criminal confinement. *Id*. The charg-

ing information identified four alternative overt acts for the conspiracy conviction: abduction, confinement, rape, and disposal of the body. *Id*. The defendant argued that there was a "reasonable possibility that the evidentiary facts used by the jury to establish the overt acts of 'abduction' or 'confinement' for Conspiracy to Commit Murder may have also been used to establish the essential elements of removal by force for the Criminal Confinement." *Id*.

Our supreme court held that the issue was "not merely whether it is possible that this occurred, but rather whether the likelihood of this occurrence is sufficiently substantial for us to conclude that it is reasonably possible that this occurred." *Id*. Our supreme court concluded that:

> [i]n view of the extensive evidence of the protracted criminal episode and the court's instructions which clearly authorized any one of several bases for finding the overt act element, we find no sufficiently substantial likelihood that the jury relied on the evidence of the abduction by removal to establish the overt act element of the conspiracy charge. The possibility is remote and speculative and therefore not reasonable.

*Id*. at 261. Consequently, the defendant's convictions for conspiracy to commit murder and criminal confinement did not violate the prohibition against double jeopardy. *Id*.

Here, the trial court entered concurrent sentences against Ziebell for both conspiracy to commit murder and murder. The jury was instructed regarding three alternative overt acts for the conspiracy conviction: "(1) [Everett] did lure [Mackey] from his home and drove with him to the area of Edgar and Eichel Streets, in the court of Vanderburgh, State of Indiana, at which time one or more of the said conspirators repeatedly struck [Mack-

ey] with a weapon; (2) one or more of the said conspirators placed the body of [Mackey] into a Ford van and drove the van to an area near the Twin Bridges in Henderson County, Kentucky; (3) one or more of the said conspirators then shot [Mackey] in the head with a shotgun." Instruction No. 1. Strong evidence of each overt act was presented at trial. As in *Long,* we find no sufficiently substantial likelihood that the jury relied on the evidence of the shooting to establish the overt act element of the conspiracy charge rather than one of the other two overt acts alleged. Consequently, as in *Long,* no double jeopardy violation occurred as a result of Ziebell's convictions for both murder and conspiracy to commit murder.

For the foregoing reasons, we affirm Ziebell's convictions for murder, a felony, conspiracy to commit murder, a class A felony, confinement, a class B felony, battery, a class C felony, and his status as an habitual offender.

Affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur with respect to the seven issues discussed and decided in the majority opinion. This includes Part IV which holds that the sentence enhancement provision of the habitual offender statute does not violate the constitutional prohibition against double jeopardy.

However, there is a serious double jeopardy concern arising from Ziebell's conviction for both murder and for conspiracy to commit murder. This concern prompts me to state that the conviction for conspiracy and the fifty-year concurrent sentence imposed thereon should be vacated.

In *Bruno v. State,* 774 N.E.2d 880 (Ind. 2002), *reh'g denied,* our Supreme Court held that a conviction for conspiracy to commit murder could not co-exist with a murder conviction when the overt act alleged in the conspiracy charge was the very act alleged in the murder charge. To be sure, in *Bruno,* only one overt act was alleged in the conspiracy count whereas in the case before us the co-conspirators were alleged to have performed "one or more" of three acts. One of those three overt acts alleged was the shooting of the victim in the head with a shotgun, the very act which was alleged as constituting the crime of murder.

In *Long v. State,* 743 N.E.2d 253 (Ind. 2001), *reh'g denied,* citing *Griffin v. State,* 717 N.E.2d 73 (Ind.1999), *cert. denied by* 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000), our Supreme Court found no double jeopardy violation under the "actual evidence" test of *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), where multiple overt acts were alleged in the conspiracy charge. The *Long* court reached that conclusion upon the basis that "there is no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both criminal confinement and conspiracy to commit murder." 743 N.E.2d at 261. In *Long,* the court pointed to the fact that the overt act common to the confinement charge was abduction of the victim but that the evidence was overwhelming as to the commission of the other overt acts of the conspiracy charge, i.e. rape and disposal of the victim's body. There, the abduction took place many days prior to the rape and murder of the victim. It was therefore a relatively minor (albeit a criminal) incident in the extended course of depraved acts engaged in by Long and his co-conspirators.

In the case before us, the shooting of the victim was the heart and soul of the mur-

der conviction and there was not only a reasonable *possibility* but a very real likelihood that it was the overt act focused upon by the jury with respect to the conspiracy charge. I deduce that the appellant here has met the actual evidence test of *Richardson* and that the conspiracy conviction should be set aside.